# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
ANORUO ASILONU,                    )
                                   )
          Plaintiff,               )
                                   )
     v.                            )     1:19cv1122
                                   )
BLESSING ASILONU, et al.,          )
                                   )
          Defendants.              )
```

## MEMORANDUM OPINION AND ORDER

This case comes before the Court on the "Motion to Appoint a Guardian Ad Litem for Blessing Asilonu" (Docket Entry 62) (the "Motion"). For the reasons that follow, the Court will deny the Motion.

## BACKGROUND

In November 2019, Anoruo Asilonu (the "Plaintiff") initiated a lawsuit against Blessing Asilonu (the "Defendant")[1] and Esther Okeiyi, alleging that "[they] have failed to provide Plaintiff with the basic level of subsistence support promised in the Form I-864 contracts that they signed . . . with the federal government in support of Plaintiff's immigration case." (Docket Entry 1 (the "Complaint") at 1–2.)[2] In response, Defendant, acting pro se,

---

1 The term "Defendant" describes both Blessing Asilonu and Esther Okeiyi, but the Motion concerns only the former, so the Court here employs the singular term to refer exclusively to Blessing Asilonu.

2 Citations herein to Docket Entry pages utilize the CM/ECF footer's pagination.

filed an unsigned answer and asserted counterclaims against Plaintiff.  (Docket Entry 5.)

Two months later, counsel for Defendant ("Defendant's Counsel") filed a joint "Notice of Appearance" (Docket Entry 25) on behalf of Defendant.  Shortly after the parties participated in an initial pretrial conference (see Minute Entry dated Feb. 24, 2020), the Court ordered "[Defendant to] re-file [her unsigned answer and counterclaim] with the signature of at least one attorney of record by [March 10, 2020]."  (Text Order dated Mar. 3, 2020.)  On March 10, 2020, Defendant's Counsel moved to extend that deadline, notifying the Court that Defendant had fired them on March 1, 2020, and citing concerns about Defendant's capacity and her ability to represent herself in this matter.  (Docket Entry 48 at 2.)  On March 17, 2020, Defendant, acting pro se, filed an amended answer and counterclaim (Docket Entry 55) (the "Amended Answer")[3] bearing her own signature and the name "DSK Law Group" on the signature line for attorneys (id. at 7).  On April 24, 2020, Defendant's Counsel filed the Motion, seeking an order appointing a guardian ad litem for Defendant on the grounds that Defendant has demonstrated "impaired thinking, diminished decision-making abilities, and diminished impulse control."  (Docket Entry 62 at 1.)

---

3    Because the Amended Answer disclosed the name of Defendant's minor child, the Court directed the Clerk to place the Amended Answer under seal and ordered Plaintiff to file a properly redacted version.  (Text Order dated Mar. 18, 2020.)  Plaintiff complied on May 15, 2020.  (Docket Entry 71.)

The Motion states that Defendant's Counsel harbor concerns about Defendant's "mental capacity and/or stability[;]" that Plaintiff has characterized Defendant as "psychotic" and questioned her abilities to participate in this action; and that, contrary to Defendant's Counsel's recommendation, Defendant has refused to submit to clinical evaluation. (Id. at 2)  The Motion further explains that Defendant drafted a civil-rights lawsuit against her parents and that she has fired and re-engaged Defendant's Counsel "on different occasions" (id. at 3).  (See id. at 2–3.)  Finally, the Motion describes a communication on March 10, 2020, from Plaintiff's counsel, in which he (i) proposes Defendant's voluntary dismissal from this action and (ii) refers to Defendant's Counsel's difficulties in "secur[ing Defendant]'s approval to file the corrected docket items." (Id.)  According to Defendant's Counsel, Plaintiff's proposal to drop Defendant from the case amounts to "an attempt . . . to dismiss or minimize the issues related to [Defendant]'s capacity[,] . . . [in particular] her ability to agree to a marriage to Plaintiff."  (Id. at 3.)

The Motion provides no further grounds for appointing a guardian ad litem and fails to identify a qualified individual willing to fill such role.  (See id. at 1–3.)  No supporting materials accompany the Motion.  (See Docket Entries dated Apr. 24, 2020, to present.)

3

Defendant opposes appointment of a guardian ad litem. (See Docket Entries 67, 80.)  In that regard, Defendant, acting pro se, first responded to the Motion with a document entitled "Motion to Dismiss" (Docket Entry 67), which asks the Court to "[d]ismiss the motion to appoint a Guardian Ad Litem for [Defendant]" (id. at 2). In support of that request, Defendant states that she informed Defendant's Counsel their "services were no longer needed for the case because [Defendant] was interested in negotiating the settlement fee and the counterclaim with [Plaintiff] and ending the case," but that at least one of her attorneys "was more interested in establishing the validity of [Plaintiff's] breach of contract claim."  (Id.)

On June 10, 2020, Defendant, again acting pro se, filed another document (styled as a response to the Motion) in which she asserts her right to represent herself and argues that Defendant's Counsel "have no basis for requesting a Guardian Ad Litem." (Docket Entry 80 at 1 (emphasis omitted).)  Defendant contends that the global pandemic has hindered communication with Defendant's Counsel and highlights Defendant's status as the sole caregiver of her minor child. (Id. at 1–2.)  The response further criticizes the conduct of all counsel in this matter, attaches documents supposedly related to Plaintiff's inheritance, indicates Defendant's willingness to settle, requests withdrawal of Defendant's Counsel, and seeks various other relief (including

4

proof from Defendant's Counsel that she re-engaged them, permission from the Court to file electronically as a pro se litigant, and assistance from the Court in securing residence at domestic violence shelters in Florida).  (Id. at 2-4.)

**DISCUSSION**

**I.  Relevant Standards**

Rule 17 of the Federal Rules of Civil Procedure provides:

> A minor or an incompetent person who does not have a duly appointed representative may sue by a next friend or by a guardian ad litem.  The [C]ourt must appoint a guardian ad litem — or issue another appropriate order — to protect a minor or incompetent person who is unrepresented in an action.

Fed. R. Civ. P. 17(c)(2).  "[Rule 17] . . . contemplates [a] form of mental deficiency which[,] whether or not accompanied by other forms of personality disorder[,] affects the person's practical ability 'to manage his or her own affairs.'"  Hudnall v. Sellner, 800 F.2d 377, 385 (4th Cir. 1986); see also Beckley Nat'l Bank v. Boone, 115 F.2d 513, 517 (4th Cir. 1940) ("The test is the ability to know the nature, character and effect of one's acts, and to understand the subject matter of business transactions in which one is engaged.") (discussing standard applicable in West Virginia and "elsewhere").  "'[M]ental incompetence' in this special sense" differs from "various forms of mental derangement or personality disorder that may cause utterly bizarre and destructive conduct in litigation as in other realms."  Hudnall, 800 F.2d at 385.

5

"[I]f there has been a legal adjudication of incompetence and that is brought to the court's attention, the Rule's provision is brought in play." Id. However, "[Rule 17] does not indicate the basis upon which a court determines the predicate fact that a party not already legally adjudicated to be so, is presently 'incompetent.'" Id.; see also Powell v. Symons, 680 F.3d 301, 303 (3d Cir. 2012) ("Although the language of [Rule 17(c)(2)] makes the obligation mandatory, there is no suggestion which factors should trigger the district court's duty of inquiry as to whether the individual at issue is incompetent." (internal citation omitted)). In the absence of a prior adjudication of incompetency, a litigant's conduct must raise a "serious . . . question" before the Court must undertake the "collateral judicial inquiry into" the litigant's competence. See Hudnall, 800 F.2d at 385; see also, e.g., Powell, 680 F.3d at 307 ("[The] duty of inquiry [under Rule 17] involves a determination of whether there is verifiable evidence of incompetence."); Allen v. Calderon, 408 F.3d 1150, 1153 (9th Cir. 2005) ("A party proceeding pro se in a civil lawsuit is entitled to a competency determination when substantial evidence of incompetence is presented."); Ferrelli v. River Manor Health Care Ctr., 323 F.3d 196, 201 n.4 (2d Cir. 2003) ("[A]bsent actual documentation or testimony by a mental health professional, a court of record, or a relevant public agency, the district court is not required to undertake an inquiry into a pro se litigant's mental

6

capacity.").[4]  That approach makes sense because of the due process concerns attendant to any finding that a litigant suffers from incompetency.  Ferrelli, 323 F.3d at 203; see also Neilson v. Colgate-Palmolive Co., 199 F.3d 642, 651 (2d Cir. 1999) ("[A] litigant possesses liberty interests in avoiding the stigma of being found incompetent, and in retaining personal control over the litigation . . . ." (internal citation omitted)); Hagins v. Redevelopment Comm'n of Greensboro, 275 N.C. 90, 105, 165 S.E.2d 490, 500 (1969) ("[N]o man shall be interfered with in his personal or property rights by the government, under the exercise of its parental authority, until the actual and positive necessity therefor is shown to exist." (internal quotation omitted)).

In addition, this Court's Local Rules provide that "[a]pplication for the appointment of a guardian ad litem to defend on behalf of a minor or incompetent person may be filed after service of the summons and complaint and before time has expired to answer or otherwise to respond."  M.D.N.C. LR 17.1(b)(2).  Such applications "must: (i) set out facts requiring such appointment, (ii) suggest a natural person suitable for appointment, (iii) contain information about that person, including willingness to serve, upon which the Court can judge his or her qualifications,

---

    4   Here, Defendant seeks to proceed pro se.  (See, e.g., Docket Entry 76 at 7.)

and (iv) be accompanied by a proposed order of appointment." M.D.N.C. LR 17.1(b)(3).

## II. Analysis

As an initial matter, the Motion fails to comply with this Court's Local Rules. First, Defendant's Counsel filed the Motion after the "time . . . expired to answer or otherwise to respond," M.D.N.C. LR 17.1(b)(2). See Fed R. Civ. P. 12(a)(1)(A) ("A defendant must serve an answer . . . within 21 days after being served with the summons and complaint[.]").[5] Second, the Motion suggests no "natural person suitable for appointment." M.D.N.C. LR 17.1(b)(3). The Motion nowhere addresses its apparent untimeliness or failure to identify a suitable guardian ad litem willing to serve in this matter. (See Docket Entry 62 at 1-3.) Those failures to comply with this Court's Local Rules alone justify denial of the Motion. See M.D.N.C. LR 83.4(a).

Furthermore, in moving for appointment of an unspecified guardian ad litem, the Motion relies on generalized and unverified factual allegations. (See, e.g., Docket Entry 62 at 2 (asserting that, "[u]pon observation, [Defendant's Counsel] are concerned about [Defendant's] impaired thinking, diminished decision-making abilities, diminished impulse control and the inability to

---

5 Plaintiff achieved service of the Complaint on Defendant no later than November 27, 2019, the date on which Defendant filed her unsigned answer. (See Docket Entry 5 at 1.) Approximately five months later, on April 24, 2020, Defendant's Counsel filed the Motion. (See Docket Entry 62 at 3.)

8

participate in her current legal matters," as well as "[t]hat [Defendant], over a course of the months of February, March and April - despite advice, encouragement and support of her attorneys, refused clinical evaluation").) However, unsworn assertions do not constitute admissible evidence. See, e.g., Dillon v. BMO Harris Bank, N.A., No. 1:13cv897, 2014 WL 911950, at *2 (M.D.N.C. Mar. 10, 2014) ("Statements in briefs are not evidence . . . .") (collecting cases); Reeves v. Hubbard, No. 1:08cv721, 2011 WL 4499099, at *5 n.14 (M.D.N.C. Sept. 27, 2011) (explaining that, unless "sworn or made under penalty of perjury," factual allegations in court filings "do not constitute evidence"), recommendation adopted, slip op. (M.D.N.C. Nov. 21, 2011). Standing alone, Defendant's Counsel's unsubstantiated concerns fail to call Defendant's competence into "serious . . . question," Hudnall, 800 F.2d at 385.[6]

---

[6] Although the Motion does not mention them, the record does reveal some instances of Defendant's past intemperate behavior. For example, as part of a sworn declaration accompanying another motion, Plaintiff attached an email he received from Defendant in August 2018, which bears the subject line "murder suicide" and warns Plaintiff that he must "decide if [he is] ready to loose [sic] [his] life." (Docket Entry 17-1 at 81.) Although that singular email reflects an instance in which Defendant arguably acted "oddly, or foolishly, or self-destructively," it fails to rise to the level of mental incompetence within the meaning of Rule 17. See Hudnall, 800 F.2d at 379, 385-86 (finding no need for judicial inquiry into competence of pro se litigant who had alleged far-fetched conspiracy involving "murder, bigamy, and misprision of felony").

9

Moreover, evidence in the record undermines the Motion's unsupported assertions.  For example, Defendant coherently opposes the Motion and maintains that a disagreement over litigation strategy, with Defendant wishing to settle this litigation and her counsel wishing to litigate its merits, motivated the request for appointment of a guardian ad litem by Defendant's Counsel.  (See Docket Entry 67 at 2 (explaining that Defendant discharged Defendant's Counsel because Defendant wants to "negotiat[e] the settlement fee . . . and end[] the case," but counsel wants to litigate merits of Plaintiff's claim); Docket Entry 80 at 4 ("[Defendant's Counsel] do not respect [Defendant] as their client and have never listened to any request made by [Defendant] as their client.").)  The Motion itself underscores such disagreement, as Defendant's Counsel evidently view Defendant's capacity as a potential defense going to Defendant's "ability to agree to a marriage to Plaintiff" and express their "fear" that, "[a]bsent the Court . . . requiring an evaluation of [Defendant] regarding her capacity," Defendant's "rights will either be abused and/or not taken into consideration – when her capacity is an issue which must be considered and brought before the Court."  (Docket Entry 62 at 3.)  In addition, although at times reflecting a pro se litigant's unfamiliarity with the legal process, Defendant's active and coherent participation in this litigation undermines the notion that Defendant suffers from incompetency within the meaning of Rule

10

17.  (See Docket Entry 5; Docket Entry 55; Docket Entry 65; Docket Entry 66; Docket Entry 67; Docket Entry 76; Docket Entry 80.)

As a result, given the Motion's shortcomings and the record evidence tending to show Defendant's ability to manage her own affairs, the Motion fails to trigger the Court's duty to make a "specific inquiry into whether . . . [Defendant] may be 'incompetent' in fact." Hudnall, 800 F.2d at 385. Due process and reputational concerns weigh against ill-founded inquiries on that subject. See Neilson, 199 F.3d at 651. Under the circumstances, Court will deny the Motion.

## CONCLUSION

The Motion fails to comply with this Court's Local Rule 17.1(b). Moreover, the record raises no "serious . . . question," Hudnall, 800 F.2d at 385, about Defendant's competence.

**IT IS THEREFORE ORDERED** that the Motion (Docket Entry 62) is **DENIED.**

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**

February 1, 2021