**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA**

| | | |
|---|---|---|
| ANORUO U. ASILONU, an individual, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | |
| BLESSING ASILONU, an individual, and ESTHER OKEIYI, an individual and her marital community, | ) ) ) ) | |
| Defendants. | ) ) ) | 1:19CV1122 |
| BLESSING ASILONU, ESTHER OKEIYI, and SUNDAY OKEIYI, | ) ) ) | |
| Counterclaim-Plaintiffs, | ) ) | |
| v. | ) ) ) | |
| ANORUO U. ASILONU, | ) ) | |
| Counterclaim-Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court on various related motions by Plaintiff and Counterclaim-Defendant Anoruo U. Asilonu ("Plaintiff"): Revised Motion for Partial Judgment on the Pleadings Against Defendant Esther Okeiyi [Doc. #37], Amended Motion to Dismiss for Failure to State a Claim Against Defendant Esther Okeiyi [Doc. #40], Motion to Dismiss Counterclaims of Sunday Okeiyi [Doc. #70], Motion to Dismiss Defendant Blessing Asilonu [Doc. #82], and Motion to Dismiss

Counterclaims in Answer of Defendant Blessing Asilonu [Doc. #102]. In these motions, Plaintiff seeks to dismiss Esther Okeiyi's affirmative defenses, each Counterclaim-Plaintiff's counterclaims, and Blessing Asilonu as a party. For the reasons that follow, the motion for partial judgment on the pleadings is granted in part and denied in part and all other motions are granted.

I.

The underlying action is one for enforcement of Form I-864, an Affidavit of Support, submitted in support of Plaintiff's application for legal permanent residency. Plaintiff is a Nigerian citizen who became engaged to Blessing Asilonu ("Dr. Asilonu"), a United States citizen, while he resided in Nigeria. (Compl. ¶¶ 8, 50-52 [Doc. #1]; Esther Okeyi's [sic] Second Am. Answer (Redacted) ("Dr. Okeiyi's Am. Answer") ¶¶ 50, 52 [Doc. #47].) After Dr. Asilonu initiated the legal process for Plaintiff's entry into the United States, he received a K-1 fiancé visa and arrived in the United States in December 2015. (Compl. ¶¶ 54-59; Dr. Okeiyi's Am. Answer ¶¶ 56-59.) He and Dr. Asilonu married soon afterwards on January 8, 2016. (Compl. ¶ 61; Dr. Okeiyi's Am. Answer ¶ 61.)

As part of Plaintiff's Application for Permanent Residency, he was required to submit a Form I-864, Affidavit of Support, "to overcome public charge inadmissibility." (Compl. ¶¶ 20-26, 69-70; Dr. Okeiyi's Am. Answer ¶¶ 69-70.) Because Dr. Asilonu's finances were insufficient for her to serve as Plaintiff's sole Form I-864 financial sponsor, she and her mother Esther Okeiyi ("Dr. Okeiyi") each executed a Form I-864. (Compl. ¶¶ 64-67; Dr. Okeiyi's Am. Answer ¶¶ 64, 66,

2

67; Primary Form I-864 by Blessing Chibuzo Okeiyi (Apr. 14, 2016), Ex. 2 to Compl.; First Joint Sponsor Form I-864 by Esther Chinyere Okeiyi (Apr. 11, 2016), Ex. 3 to Compl.)  These two Form I-864s were submitted to the United States Citizenship and Immigration Services ("USCIS") with Plaintiff's Application for Permanent Residency on May 2, 2016. (Compl. ¶¶ 69, 70; Dr. Okeiyi's Am. Answer ¶¶ 69, 70.)  After USCIS received his application, Plaintiff's immigration attorney became aware of deficiencies in Dr. Okeiyi's Form I-864 so Dr. Okeiyi executed a Second Joint Sponsor Form I-864 which was filed with USCIS in support of Plaintiff's application. (Compl. ¶¶ 71, 72, 74; Dr. Okeiyi's Am. Answer ¶¶ 71, 72, 74; Second Joint Sponsor Form I-864 by Esther Chinyere Okeiyi (July 14, 2016), Ex. 7 to Compl.)  On September 22, 2016, USCIS approved Plaintiff's application and he gained the status of a Lawful Permanent Resident ("LPR"). (Compl. ¶¶ 75, 77; Dr. Okeiyi's Am. Answer ¶¶ 75, 77.)

As explained in each of the Form I-864s that Dr. Asilonu and Dr. Okeiyi executed, when an immigrant submits an executed Form I-864 with his application for adjustment of status to an LPR, a contract is created between the sponsor and the United States Government according to which the sponsor "agree[s] to assume certain specific obligations under the Immigration and Nationality Act (INA) and other Federal laws." (E.g., Second Joint Sponsor Form I-864, pt. 8, at 7 (citing § 213A of the INA).)

The document further advises that if the immigrant becomes an LPR based on a Form I-864 signed by the sponsor, the sponsor must "[p]rovide the intending

3

immigrant any support necessary to maintain him . . . at an income that is at least 125 percent of the Federal Poverty Guidelines for his . . . household size . . . ." (Id.)  If the sponsor does not "provide sufficient support to the person who becomes a lawful permanent resident based on a Form I-864 that [the sponsor] signed, that person may sue [the sponsor] for this support." (E.g., id. pt. 8, at 8.)

The sponsor is also made aware of the events that terminate her support obligation:  if the LPR becomes a United States citizen; has worked or can receive credit for forty quarters of coverage under the Social Security Act; no longer has LPR status and has left the United States; is subject to removal, but applies for and obtains in removal proceedings a new grant of adjustment of status based on a new affidavit of support if one is required; or dies; or if the sponsor dies ("Terminating Events"). (E.g., id.)  "Divorce **does not** terminate [the sponsor's] obligations under Form I-864." (E.g., id.)

Plaintiff alleges that because his "LPR status was 'based on'" the Primary Form I-864 and the Second Joint Sponsor Form I-864, Dr. Asilonu and Dr. Okeiyi were required to provide him sufficient financial support. (Compl. ¶¶ 78, 79, 94, 95.)  Yet, Plaintiff alleges that when his annual income in 2017, 2018, and 2019 (as of November 8) was below 125 percent of the federal poverty guideline, Dr. Asilonu and Dr. Okeiyi failed to provide the requisite financial support. (Id. ¶¶ 91, 92, 94, 95.)  None of the Terminating Events has occurred. (Id. ¶¶ 80-85; Dr. Okeiyi's Am. Answer ¶ 85.)  As a result, Plaintiff has sued Dr. Asilonu and Dr.

4

Okeiyi for breach of contract as the third-party beneficiary to the Primary Form I-864 and Second Joint Form I-864, respectively. (Compl. ¶¶ 102-19.)

## II.

In response, Dr. Okeiyi answered the Complaint and asserted fifteen so-called affirmative defenses. (See generally Dr. Okeiyi's Am. Answer.) As affirmative defenses, she alleges: (1) breach of implied warranty of good faith and fair dealing "by acting unreasonably, unethically, immorally, and fraudulently, denying the benefits of the contract to Dr. Esther Okeiyi", (2) "[n]o breach" because she performed all her duties under the contract "other than any duties which were prevented or excused", (3) contributory negligence because Plaintiff is "at fault, due to his conduct, actions and omissions", (4) unclean hands "due to [Plaintiff's] conduct, actions and omissions" so "any equitable relief is barred", (5) waiver and estoppel arising from Plaintiff's "conduct, actions and omissions", (6) fraud by Plaintiff, (7) "[n]o breach" because she "has breached no duties owed to [Plaintiff], as a result of his conduct, theft, actions and omissions", (8) impossibility and impracticability as a result of Plaintiff's "conduct, theft, actions and omissions", (9) unconscionability because her "performance of her contractual obligations are [sic] unconscionable as a result of [Plaintiff's] intervening events", (10) "Non-Moving Party" requiring "[a]ll contract provisions of the I-864 Affidavit of Support [to] be determined in the light most favorable to the non-drafting party", (11) offset "[a]s a result of [her] financial efforts", (12) failure to mitigate on Plaintiff's part for failing "to take reasonable steps to reduce or minimize the

5

damages experienced", (13) her "entitle[ment] to counterclaim as set out", (14) duress/undue influence when Plaintiff "forced her to enter into the contract against her will and physical and/or mental capacity by taking unfair advantage of her physical and/or mental state" as she "had gone through a serious surgery for removal of [ovarian] cancer", (15) incapacity because she "was battling a return of Ovarian Cancer" and "had gone through a serious surgery for removal of this cancer, and lacked the mental and/or physical capacity" to enter into the contract, and (16) "further and additional affirmative defenses, which are not yet known to the Defendant, but which may become known through future discovery." (Dr. Okeiyi's Am. Answer at 30-34.)

Plaintiff moves for partial judgment on the pleadings on all of these "affirmative defenses . . . because they are categorically inapplicable to cases enforcing the Form I-864, Affidavit of Support." (Br. in Supp. of Pl.'s (1) Mot. to Dismiss & (2) Revised Mot. for Partial J. on the Pleadings at 5 ("Br. in Supp. of Docs. 37, 40") [Doc. #39].) Rule 12(c) of the Federal Rules of Civil Procedure provides that "[a]fter the pleadings are closed – but early enough not to delay trial – a party may move for judgment on the pleadings." A court considering a motion for judgment on the pleadings must "view the facts presented in the pleadings and inferences drawn therefrom in the light most favorable to the non-moving party." Atwater ex rel. Estate of Peterson v. Nortel Networks, Inc., 394 F. Supp. 2d 730, 731 (M.D.N.C. 2005) (citing Edwards v. City of Goldsboro, 178 F.3d 231, 248 (4th Cir. 1999)).

6

A motion pursuant to Rule 12(c) is analyzed under the same standard as a motion to dismiss for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Massey v. Ojaniit, 759 F.3d 343, 347 (4th Cir. 2014). Particularly relevant here, because a 12(b)(6) motion "tests the sufficiency of the complaint, generally [such a motion] cannot reach the merits of an affirmative defense". Goodman v. Praxair, Inc., 494 F.3d 458, 464 (4th Cir. 2007). There are, though, "relatively rare circumstances where facts sufficient to rule on affirmative defense are alleged in the complaint", but "all [of the] facts necessary to the affirmative defense [must] clearly appear on the face of the complaint." Id. (internal quotation omitted). These same principles apply to a 12(c) motion. See, e.g., Demetry v. Lasko Prods., Inc., 284 F. App'x 14, 15 (4th Cir. July 7, 2008) (unpublished) (quoting and applying Goodman to a 12(c) motion).

Plaintiff contends that his motion "presents pure questions of law" because "8 U.S.C. § 1183a does not allow a Form I-864 sponsor to avoid liability on those grounds [asserted in Dr. Okeiyi's affirmative defenses]." (Br. in Supp. of Docs. 37, 40 at 5, 6.) According to Plaintiff, "the only affirmative defenses available to a Form I-864 defendant are the five provided for by the associated federal law", the Terminating Events. (Id. at 6 (citing 8 C.F.R. § 213a.2(e)(2)(i), 8 U.S.C. § 1183a(a)(2)-(3)).) He acknowledges that the Form I-864 is a contract, but, citing Erler v. Erler, 824 F.3d 1173 (9th Cir. 2016), Liu v. Mund, 686 F.2d 418 (7th Cir. 2012), and Cyrousi v. Kashyap, 386 F. Supp. 3d 1278 (C.D. Cal. 2019), among other cases, argues that "it is no ordinary contract". (Id. at 7-8.) Instead,

he contends, the Form I-864 "is a tool that has been fashioned by Congress to further an immigration policy commitment . . . that recent immigrants not be a drain on public resources." (Id. at 7.)

Dr. Okeiyi responds and relies on the summary judgment standard of Rule 56 arguing that genuine issues of material fact foreclose Plaintiff's motion. (Mem. of Law in Opp'n to Pl.'s Mot. for Partial J. on the Pleadings ("Mem. in Opp'n to Doc. 37") at 2-12[1] [Doc. #57].)  Although she bases her opposition on a different legal standard, she does rely on Liu v. Mund in support of her position that her common law contract defenses serve Congress's objectives here. (Id. at 5.)  In so doing, Dr. Okeiyi cites to Title V of the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 where Congress explained that "[s]**elf-sufficiency has been a basic principal of United States immigration law since this country's earliest immigration statutes**" and that immigrants "**rely on their own capabilities and the resources of their families**, their sponsors, and private organizations" rather than "public resources". (Id. (emphasis in Mem. in Opp'n to Doc. 37).)  She then explains that "material issues of fact" preclude judgment on the pleadings. (See id. at 7-12.)  Plaintiff contends that Dr. Okeiyi did not address "even in passing" his argument that "common law defenses are categorically unavailable to I-864 sponsors because the statutory scheme does not permit them" and that Mund

---

[1] These page numbers correspond to those created with the ECF filing, because there are no page numbers in Dr. Okeiyi's brief.

Case 1:19-cv-01122-NCT-LPA   Document 109   Filed 07/22/21   Page 8 of 35

actually supports his position, not Dr. Okeiyi's. (Reply Br. in Supp. of Pl.'s Revised

Mot. for Partial J. on the Pleadings ("Reply Br. to Doc. 37") at 1-2 [Doc. #59].)

> As explained in the Form I-864, an affidavit of support will not
>
> be accepted by the Attorney General or by any consular officer to establish that an alien is not excludable as a public charge . . . unless such affidavit is executed by a sponsor of the alien as a contract – (A) in which the sponsor agrees to provide support to maintain the sponsored alien at an annual income that is not less than 125 percent of the Federal poverty line during the period in which the affidavit is enforceable; (B) that is legally enforceable against the sponsor by the sponsored alien, the Federal Government, any State (or any political subdivision of such State), or by any other entity that provides any means-tested public benefit . . . ; and (C) in which the sponsor agrees to submit to the jurisdiction of any Federal or State court for the purpose of actions [to enforce the contract].

8 U.S.C. § 1183a(a)(1)(A)-(C). "An affidavit of support is executed when a

sponsor signs and submits the appropriate forms in accordance with the form

instructions to USCIS or the Department of State . . . ." 8 C.F.R. § 213a.2(a)(ii).

"Execution of an affidavit of support . . . creates a contract between the sponsor

and the U.S. Government for the benefit of the sponsored immigrant, and of any

Federal, State, or local governmental agency or private entity that administers any

means-tested public benefits program." Id. § 213a.2(d). A sponsor or joint

sponsor can avoid her obligation under the contract only if she "disavow[s]" "her

agreement to act as a sponsor . . . [or] joint sponsor" "in writing and submits the

document to the immigration officer or immigration judge before the decision on

the adjustment application. Id. § 213a.2(f)(2).

9

The sponsor's support obligation begins when the "immigrant's application . . . for adjustment of status on the basis of an application . . . that included the affidavit of support" is granted. Id. § 213a.2(e)(1). The obligation "terminate[s] by operation of law when the sponsored immigrant" becomes a United States citizen, meets forty qualifying quarters of coverage under Title II of the Social Security Act, is no longer an LPR and leaves the United States, becomes subject to removal and receives a new grant of adjustment of status, or dies or when the sponsor or joint sponsor dies. Id. § 213a.2(e)(2)(i), (ii). The obligation can be enforced by the "sponsored immigrant, or any Federal, State, or local governmental agency or private entity that provides any means-tested public benefit to the sponsored immigrant after the sponsored immigrant acquires permanent resident status". Id. § 213.a2(d).

Because both parties rely on Mund in support of their positions, it is a natural place to start. The question before the Seventh Circuit Court of Appeals was "whether in a suit to enforce the obligation of support created by the federal affidavit the plaintiff has a legal duty to mitigate damages." 686 F.3d at 420. The court answered no. It recognized that the duty to mitigate is part of the common law of contracts, but noted that "the listing of excusing conditions [in the affidavit] does not mention the alien's failing to seek work or otherwise failing to mitigate his or her damages." Id. at 420, 421. The court queried "whether reading a duty of mitigation into the immigration statute and the regulations and the affidavit-contract would serve or disserve statutory and regulatory objectives" because "[s]o

10

far as [the court] can tell, neither Congress that enacted sections 1182 and 1183a of the [INA] nor the immigration authorities that promulgated implementing regulations and have drafted successive versions of Form I-864 ever thought about mitigation of damages." Id. at 421-22. "[W]hy should [the judiciary] make failure to mitigate a further excusing condition?" Id. at 422.

The Justice Department argued that imposing such a duty "would encourage immigrants to become self-sufficient", but the court responded that that "is not the goal stated in the statute; the stated statutory goal . . . is to prevent the admission to the United States of any alien who 'is likely at any time to become a public charge.'" Id. As the court saw it, "[t]he direct path to that goal would involve imposing on the sponsor a duty of support with no excusing conditions." Id. Imposing a duty to mitigate would only benefit the sponsor, "and it is not for [her] benefit that the duty of support was imposed; it was imposed for the benefit of federal and state taxpayers and of the donors to organizations that provide charity for the poor." Id.

In Liu v. Kell, 299 F. Supp. 3d 1128, 1133 (W.D. Wash. 2017), when faced with the defendant's argument that there is a duty to mitigate "inherent in contract disputes", the court succinctly explained,

> At issue in this instance is not state contract law, but federal law. The federal law underlying the I-864 Affidavit clearly specifies the instances in which the support obligation can be avoided. 8 U.S.C. § 1183a(a)(2)-(3). None of the criteria are met by an immigrant's willful failure to seek employment. The Court will not look beyond such clear statutory language.

11

And, when the defendant argued that imposing such a duty supports self-sufficiency, the court acknowledged, as have other courts, that "may be a compelling goal, [but] it is not the purpose of the I-864 Affidavit, which is to ensure the immigrant does not become a 'public charge.'" Id. (citing Mund, 686 F.3d at 422); see also id. at 1134 (also dismissing waiver as a defense because "the statute provides an exhaustive list of terminating events" and "[w]aiver is not on that list").

When faced with the question of whether a duty to mitigate or other affirmative defenses to contract obligations apply to I-864 enforcement actions, many other district courts have also answered no. In Cyrousi v. Kashyap, 386 F. Supp. 3d 1278, 1284 (C.D. Cal. 2019), the defendant asserted as affirmative defenses laches, waiver, statute of limitations, failure to mitigate, and unclean hands. The court interpreted Erler v. Erler, 824 F.3d 1173, 1177 (9th Cir. 2016), which held that "neither a divorce judgment nor a premarital agreement" terminates the support obligation, to hold that the defenses asserted by the defendant were inapplicable. Cyrousi, 386 F. Supp. 3d at 1284. The Erler court "emphasized that the purpose of an I-864 Affidavit of Support is to 'prevent the admission to the United States of any alien who is likely to any time to become a public charge,' and held that this purpose 'is best served by interpreting the affidavit in a way that makes prospective sponsors more cautious about sponsoring immigrants.'" Id. (quoting Erler, 824 F.3d at 1179). Thus, said the Cyrousi court, although "Erler[] does not explicitly state that no ordinary contract

12

defenses are permitted in I-864 cases, its holding supports a conclusion that any defenses that would undermine the purpose of the Affidavit are invalid." Id. Therefore, the asserted defenses in Cyrousi were not allowed because they "would place the immigrant at risk of becoming public charge, and because courts have enforced Congress's policy choice of placing the risk on the sponsor rather than on the state or federal taxpayers". Id. See also, e.g., Burkhalter v. Burkhalter, No. EDCV 19-272 JGB, 2020 WL 1659263, at *4 (C.D. Cal. Feb. 28, 2020) ("[T]raditional contract defenses cannot be used to avoid support obligations."); Nwauwa v. Ugochukwu, No. 1:18-CV-1130-RP, 2019 WL 2077048, at *2 n.3 (W.D. Tex. May 10, 2019) (not addressing defendant's allegation that he was fraudulently induced into marriage, but agreeing with the reasoning of other courts that the validity of a marriage is an issue for state court and "not a defense to enforcement of an Affidavit of Support"); Anderson v. United States, No. C17-0891RSL, 2019 WL 11866989, at *2-*3 (W.D. Wash. Feb. 25, 2019) (finding as a matter of law that the defenses of fraud, misrepresentation, equitable estoppel, and failure to mitigate fail); Rahman v. Chen, 281 F. Supp. 3d 1124, 1125-26 (W.D. Wash. 2017) (finding "contract-based defenses" "invalid as a matter of law"); Dorsaneo v. Dorsaneo, 261 F. Supp. 3d 1052, 1054-55 (N.D. Cal. 2017) (finding that fraudulent inducement and estoppel are "not authorized by the statute or its implementing regulations, and allowing [them] interferes with the purpose of the I-864 affidavit requirement"), aff'd, 780 F. App'x 532 (9th Cir. 2019) (quoting Erler for the statutory scheme's purpose); Allen v. Goard, No. 14-61147-CIV-

13

DIMITROULEAS, 2014 WL 11776965 (Sept. 5, 2014) (finding the defense of duty to mitigate fails as a matter of law). Cf. Belevich v. Thomas, No. 2:17-cv-1193-AKK, 2019 WL 2550023, at *4 (N.D. Ala. June 20, 2019) (finding the fact that the plaintiff was subject to a protective order and facing charges "irrelevant to this court's inquiry regarding whether the Defendants are obligated to provide support to [the plaintiff] as they represented to the Government that they would do when they sponsored him").

However, other courts have applied traditional contract defenses to I-864 actions. See, e.g., Toure-Davis v. Davis, No. WGC-13-916, 2014 WL 1292228, at *5-*8 (D. Md. Mar. 28, 2014); Matloob v. Farhan, No. WDQ-11-1943, 2014 WL 1401924, at *3 (D. Md. Apr. 9, 2014) (citing Liu v. Mund, 748 F. Supp. 2d 958, 963 (W.D. Wis. 2010) & Cheshire v. Cheshire, No. 3:05-cv-00453-TJC-MCR, 2006 WL 1208010, at *4 (M.D. Fla. May 4, 2006)). Yet, it is unclear if the propriety of such defenses was at issue in Toure-Davis, and it does not appear to be at issue in Matloob. Cf. Dorsaneo, 261 F. Supp. 3d at 1054-55 (noting that "[a] handful of district courts have touched on the question whether fraudulent inducement is a viable defense to an I-864 enforcement action, but all those cases appear to have been resolved based on a lack of evidence of fraud, with some suggesting that even if there was such evidence the sponsor would remain obligated to pay, and others suggesting in dicta that such evidence would lift the obligation").

14

The Court is persuaded by the reasoning of the courts that have found that traditional contract defenses do not apply here. Holding otherwise would undermine the purpose of the statue and regulations. Therefore, Dr. Okeiyi's so-called affirmative defenses of breach of implied warranty of good faith and fair dealing (first defense), contributory negligence[2] (third defense), unclean hands (fourth defense), waiver and estoppel (fifth defense), fraud (sixth defense), no breach[3] (seventh defense), impossibility and impracticability (eighth defense), unconscionability (ninth defense), and failure to mitigate (twelfth defense) are dismissed.

So, too, are her defenses of duress/undue influence (fourteenth defense) and incapacity (fifteenth defense) in which she alleges that Plaintiff took advantage of her mental and physical states and she lacked the capacity to enter into the contract, respectively, resulting from her return of cancer and "serious surgery" to remove it, "rendering the contract invalid." As the Anderson court understood, "Defendant entered into a binding agreement with the United States for the benefit

---

[2] At least under North Carolina law, contributory negligence is a defense to a negligence action, see, e.g., Draughon v. Evening Star Holiness Church of Dunn, 843 S.E.2d 72 (N.C. 2020), but this is a suit to enforce a contract. To the extent that the substantive allegation in support of contributory negligence refers to Plaintiff's breach of his own contractual duties that somehow excuses Dr. Okeiyi's, that defense is not applicable here.

[3] Dr. Okeiyi alleges that she "breached no duties . . . as a result of [Plaintiff's] conduct, theft, actions and omissions" and he "is at fault". This allegation that Plaintiff's conduct somehow excused Dr. Okeiyi's performance under the contract is not applicable here. Note, though, that her second defense – no breach because she performed under the contract – is different and is permissible.

15

of plaintiff, a sponsored immigrant. Allegations of pre-contractual impropriety on plaintiff's part do not make defendant's promises to the United States void or voidable." 2019 WL 11866989, at *2. Moreover, the United States cannot accept an affidavit of support unless it "is legally enforceable against the sponsor by the sponsored alien . . . ." 8 U.S.C. § 1183a(a)(1); see also Shah v. Shah, No. 12-4648 (RBK/KMW), 2014 WL 185914, at *4 (D.N.J. Jan. 14, 2014) (recognizing the same and quoting 8 U.S.C. § 1183a(a)(1)). The Shah court explained, "Congress determined that for an I[-]864 to be valid at all, the sponsored alien must be able to enforce it at the time when it is submitted to the United States." 2014 WL 185914, at *4. Here, the United States accepted Dr. Okeiyi's Affidavit of Support and approved Plaintiff's application for permanent residency in part because of her Affidavit of Support. Thus, the Form I-864 had to have been an enforceable contract. As such, Dr. Okeiyi's defenses that the contract is "invalid" must be dismissed.

On the other hand, Dr. Okeiyi is permitted to argue that she did not breach the contract because she performed her contractual obligations (second defense). In addition, she alleges that "she is entitled to offset" "[a]s a result of [her] financial efforts" (eleventh defense). If she is found liable, in the calculation of damages she may present evidence of the support she has provided Plaintiff. Likewise, to the extent that she alleges Plaintiff "is gainfully employed" as part of her failure-to-mitigate defense, his income, if any, will be accounted for in the calculation of damages.

16

The remainder of Dr. Okeiyi's so-called affirmative defenses are not defenses. She alleges that all "contract provisions . . . should be determined in the light most favorable to the non-drafting party" (tenth defense), she "is entitled to counterclaim" (thirteenth defense), and she "asserts each and every affirmative defense as it may be ascertained through future discovery" (sixteenth defense). Therefore, they are dismissed.

In sum, each of Dr. Okeiyi's affirmative defenses is dismissed except as follows. In response to Plaintiff's allegations, she may argue that she did not breach the contract because she performed her contractual obligations (second defense). If she is found liable, her financial support of Plaintiff (eleventh defense) and Plaintiff's income, if any, will be considered when damages are calculated.

III.

Plaintiff also moves to dismiss Dr. Okeiyi's counterclaims for lack of subject matter jurisdiction or, in the alternative, failure to state a claim. Dr. Okeiyi has asserted thirteen counterclaims: (1) violation of the Equal Protection Clause brought under 42 U.S.C. § 1983, (2) civil elder abuse, (3) fraud, (4) damage to real property, (5) defamation – slander, (6) defamation – libel, (7) intentional infliction of emotional distress, (8) negligent infliction of emotional distress, (9) breach of contract, (10) breach of the covenant of good faith and fair dealing, (11) unjust enrichment, (12) promissory estoppel[4], and (13) mandamus. Plaintiff argues that

_____

[4] Although Dr. Okeiyi is identified in the title of this counterclaim, (see Countercls. at 28 ("Promissory Estoppel As to Dr. Esther Okeiyi")), she is not named in the

17

these counterclaims do not share a common nucleus of operative fact with his claim against Dr. Okeiyi. (Br. in Supp. of Docs. 37, 40 at 9-10 (citing law on supplemental jurisdiction).)  Dr. Okeiyi appears to contend that her counterclaims arise from the same transaction as Plaintiff's claim. (Mem. of Law in Opp'n to Pl.'s Mot. to Dismiss ("Mem. in Opp'n to Doc. 40") at 2-3 (citing Rule 13 of the Federal Rules of Civil Procedure).)  Neither party correctly addresses the binding law in the Fourth Circuit that determines whether there is subject matter jurisdiction over counterclaims.

Plaintiff makes a facial challenge to subject matter jurisdiction in that he argues "that [the counterclaims] simply fail[] to allege facts upon which subject matter jurisdiction can be based", Kerns v. United States, 585 F.3d 187, 192 (4th Cir. 2009).  The facts alleged in those claims are assumed to be true, "and the motion must be denied if the [counterclaim] alleges sufficient facts to invoke subject matter jurisdiction." Id.  It is the burden of the party asserting a claim to prove subject matter jurisdiction. See Richmond, Fredericksburg & Potomac R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991).

There are two types of counterclaims – compulsory and permissive.  A compulsory counterclaim "arises out of the transaction or occurrence that is the subject matter of the opposing party's claim". Fed. R. Civ. P. 13(a)(1)(A).  A permissive counterclaim is one "that is not compulsory." Fed. R. Civ. P. 13(b).  In

_____

allegations in support of this counterclaim.  Instead, Dr. Sunday Okeiyi is the person to whom Plaintiff allegedly made a promise. (See Countercls. ¶¶ 143-148.)

Case 1:19-cv-01122-NCT-LPA   Document 109   Filed 07/22/21   Page 18 of 35

the Fourth Circuit, the distinction is critical to determining subject matter jurisdiction over counterclaims. As the Fourth Circuit Court of Appeals explained, a compulsory counterclaim is within the court's jurisdiction and requires no independent basis for federal jurisdiction; whereas, a permissive counterclaim "must have its own independent jurisdictional base" – diversity or federal question jurisdiction. Painter v. Harvey, 863 F.2d 329, 331 (1988) (noting that "[t]he sole question on Painter's appeal is the nature of Harvey's counterclaim").

"The Fourth Circuit has not examined its holdings in Painter and Sue & Sam Mfg. Co.[ v. B-L-S Constr. Co., 538 F.2d 1048 (4th Cir. 1976),] in a published opinion after Congress enacted [28 U.S.C. §] 1367 and has continued to apply the precedent in unpublished cases." Colborn v. Forest Good Eats, LLC, No. 5:10-CV-431-D, 2020 WL 5629765, at *8 (E.D.N.C. Sept. 21, 2020). District courts within the circuit "continue to recognize this principle [from Painter] as binding even after section 1367's enactment." Id. at *7 (citing cases).

Four factors guide the inquiry into whether a counterclaim is compulsory:

(1) Are the issues of fact and law raised in the claim and counterclaim largely the same? (2) Would res judicata bar a subsequent suit on the party's counterclaim, absent the compulsory counterclaim rule? (3) Will substantially the same evidence support of refute the claim as well as the counterclaim? And (4) Is there any logical relationship between the claim and counterclaim?

Painter, 863 F.2d at 331 (citing Sue & Sam Mfg. Co., 538 F.2d at 1051-53). But, an affirmative answer to each question is not needed for a counterclaim to be compulsory. Id. (citing Sue & Sam Mfg. Co., 538 F.2d at 1053).

19

Here, the court has federal question jurisdiction over one of Dr. Okeiyi's counterclaims, but there is neither federal question nor diversity jurisdiction over her state law counterclaims. As to those counterclaims, their nature as compulsory or permissive is determinative.

Because of the number of counterclaims, it is most efficient to determine first "the issues of fact and law raised in" Plaintiff's claim and what evidence "support[s] or refute[s] the claim". Painter, 863 F.2d at 331. The issues of fact and law include (a) whether Dr. Okeiyi signed the Second Joint Sponsor Form I-864 Affidavit of Support, (b) whether it was submitted in support of Plaintiff's application for permanent residency, (c) whether his permanent residency was granted, (d) if so, Plaintiff's annual income since he gained legal permanent resident status, (e) for each year since Plaintiff gained legal permanent resident status, the level of income that was at least 125 percent of the Federal Poverty Guidelines for his household size and whether Plaintiff's annual income was at least that amount, (f) if not, the amount of financial support Dr. Okeiyi provided to Plaintiff, and (g) whether any terminating events have occurred. Evidence in support of or in opposition to Plaintiff's claim will be the I-864 affidavits of support, Plaintiff's application for permanent residency, the Notice of Action that his application was approved, Plaintiff's W-2s and evidence of any other source of income for each relevant year, the Federal Poverty Guidelines for each relevant

20

year, and Dr. Okeiyi's and Dr. Asilonu's financial support of Plaintiff each relevant year if such support were necessary to reach the annual threshold.[5]

## A.

There is no question that Dr. Okeiyi's state law counterclaims – civil elder abuse, fraud, damage to real property, slander, libel, intentional and negligent infliction of emotional distress, breach of contract, breach of covenant of good faith and fair dealing, unjust enrichment, and mandamus[6] – are permissive.  The issues of fact and law raised in each of the counterclaims are not largely the same as those in Plaintiff's I-864 claim, nor is the evidence that supports or refutes each counterclaim substantially the same as the evidence that supports or refutes Plaintiff's claim, nor is there a logical relationship between the counterclaims and Plaintiff's claim, nor would res judicata bar a suit on any of Dr. Okeiyi's counterclaims.  The only counterclaims that appear on their face to relate to Plaintiff's claim are breach of contract, breach of covenant of good faith and fair dealing, and unjust enrichment.  However, for the reasons explained above that common law contract defenses are not permitted in an I-864 action, these

---

[5] No party claims that any terminating event has occurred.

[6] Although Plaintiff relies on federal law in his motion to dismiss the mandamus counterclaim, (Br. in Supp. of Docs. 37, 40 at 13-14), Dr. Okeiyi clarifies that she brings that claim under state law by relying on North Carolina law in opposition to the motion to dismiss, (Mem. in Opp'n to Doc. 40 at 17-19).  Even if she were seeking mandamus under federal law, she has not sufficiently alleged facts to support such action. See 28 U.S.C. § 1361; see also South Carolina v. United States, 243 F. Supp. 3d 673, 681-82 (D.S.C. 2017), aff'd, 907 F.3d 742 (4th Cir. 2018) (providing elements for demonstrating the necessary conditions for issuance of a writ of mandamus and citing cases applying those elements).

21

counterclaims would not be considered compulsory because they are not appropriately raised in connection to Plaintiff's claim. Because there is no diversity jurisdiction or federal question jurisdiction as to these permissive counterclaims, they are dismissed for lack of subject matter jurisdiction.

As for the twelfth counterclaim for promissory estoppel, Dr. Okeiyi is identified in the title of this counterclaim, (see Countercls. at 28 ("Promissory Estoppel As to Dr. Esther Okeiyi")), but she is not named again in the allegations in support of this counterclaim. Instead, Dr. Sunday Okeiyi is the person to whom Plaintiff allegedly made a promise and who allegedly supported Plaintiff in reliance of his promise. (See Countercls. ¶¶ 143-148.) To the extent that this counterclaim is asserted by Dr. Okeiyi, it is dismissed for the same reasons as the other state law counterclaims.

B.

Dr. Okeiyi does bring a counterclaim based on federal law – "Violation of Equal Protection Clause Rights, 42 U.S.C. § 1983" – in which she alleges that enforcement of the I-864 "given the circumstances violates the Equal Protection Clause of the Fourteenth Amendment, both on its face and as applied, because it engages in discrimination against [her] over a Lawful Permanent Resident and penalizes the exercise of and protections of her fundamental Fourteenth Amendment rights." (Countercls. ¶ 70.) Because there is federal question jurisdiction over this counterclaim, see 28 U.S.C. § 1331, it is necessary to address Plaintiff's motion to dismiss this counterclaim pursuant to Rule 12(b)(6) of

22

the Federal Rules of Civil Procedure for failure to state a claim for which relief can be granted.

To survive a Rule 12(b)(6) motion to dismiss, a counterclaim "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the [counterclaim-]plaintiff pleads factual content that allows the court to draw the reasonable inference that the [counterclaim-]defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556); see also McCleary-Evans v. Md. Dep't of Transp., State Highway Admin., 780 F.3d 582, 585 (4th Cir. 2015) (noting that a complaint must "contain[] sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face in the sense that the complaint's factual allegations must allow a court to draw the reasonable inference that the defendant is liable for the misconduct alleged"). However, when a counterclaim states facts that are "'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S. at 557). When evaluating whether the counterclaim states a claim that is plausible on its face, the facts are construed in the light most favorable to the counterclaim-plaintiff and all reasonable inferences are drawn in her favor. U.S. ex rel. Oberg v. Pa. Higher Educ. Assistance Agency, 745 F.3d 131, 136 (4th Cir. 2014). Nevertheless, "labels and conclusions[,]" "a formulaic recitation of the elements of

23

a cause of action[,]" and "naked assertions . . . without some further factual enhancement" are insufficient. Twombly, 550 U.S. at 557. In other words, "[f]actual allegations must be enough to raise a right to relief above the speculative level". Id. at 555.

Title 42 U.S.C. § 1983 "is not itself a source of substantive rights, but merely provides a method for vindicating federal rights elsewhere conferred." Albright v. Oliver, 510 U.S. 266, 271 (1994) (internal quotations omitted). Therefore, to state a § 1983 claim, "a plaintiff must allege that [s]he was 'deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law.'" Thomas v. Salvation Army S. Territory, 841 F.3d 632, 637 (4th Cir. 2016) (quoting Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50 (1999)). "The color of law requirement 'excludes from its reach merely private conduct, no matter how discriminatory or wrongful'" except "[i]n rare cases" where "the state can 'so dominate[] [private] activity as to convert it to state action.'" Id. (quoting Am. Mfrs. Mut. Ins. Co., 526 U.S. at 50; Phillips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 181 (4th Cir. 2009 (alterations in Thomas)).

Here, the right on which Dr. Okeiyi relies is her right to Equal Protection under the Fourteenth Amendment. (Countercls. ¶ 70.) She alleges that enforcement of Form I-864 violates the Equal Protection Clause, on its face and as applied, because it discriminates "against Dr. Esther Okeiyi over a Lawful Permanent Resident." (Id.) "The Equal Protection Clause, which prohibits [the

24

government] from denying persons the equal protection of the laws, keeps governmental decisionmakers from treating differently persons who are in all relevant respects alike". Fauconier v. Clarke, 966 F.3d 265, 277 (4th Cir. 2020) (internal citations omitted).  Therefore, to state a violation of the Equal Protection Clause, "a plaintiff must plausibly allege first that [s]he has been treated differently from others with whom [s]he is similarly situated and that the unequal treatment was the result of intentional or purposeful discrimination" and "that the disparity was not justified under the appropriate level of scrutiny." Id. (internal citations omitted).

As is evident, Dr. Okeiyi has failed to state a claim for several reasons. First, the Fourteenth Amendment is inapplicable to the federal government in whose stead Dr. Okeiyi argues Plaintiff has acted in seeking to enforce Form I-864,[7] and a § 1983 claim requires action by a state actor, not a federal one. Next, even overlooking Dr. Okeiyi's reliance on § 1983 and the Fourteenth Amendment, Plaintiff is not a government actor.  Dr. Okeiyi argues that because Plaintiff "is serving in place of the government by attempting to enforce the I-864, he is acting with the authority of the government, and as a result, is subject to constitutional restraints." (Mem. in Opp'n to Doc. 40 at 5.)  Despite her creative argument, the law does not support it under these facts.  Bivens v. Six Unknown

_____

[7] The Fourteenth Amendment applies to state actors, while "actions of the federal government are reviewed under the Fifth Amendment." United States v. Al-Hamdi, 356 F.3d 564, 573 n.11 (4th Cir. 2004).

Named Agents of Federal Bureau of Narcotics, 403 U.S. 388 (1971), "in limited circumstances, allows victims of a violation of the Federal Constitution by a federal officer to recover damages against the officer in federal court despite the lack of any statute conferring such a right." Nix v. NASA Fed. Credit Union, 200 F. Supp. 3d 578, 588 (D. Md. 2016). If Dr. Okeiyi meant to bring this claim under Bivens, the Fourth Circuit Court of Appeals "harbor[s] some doubt" as to whether liability imposed on private citizens under Bivens "would ever be appropriate." Holly v. Scott, 434 F.3d 287, 291 (4th Cir. 2006) (noting that the defendants in Bivens and the two cases extending its application "were in the direct employ of the federal government"). The Holly court explained that "ample reason [exists] to be even more cautious about imputing liability to private actors under Bivens than under § 1983", which "is a congressional enactment that expressly creates liability" whereas Bivens "is a device of judicial creation." Id. at 292. Moreover, a Bivens action provides for damages, but, here, Dr. Okeiyi seeks to preclude enforcement of Form I-864.

Furthermore, while the duty of support found in Form I-864 benefits charities and state and federal taxpayers, Plaintiff does not act in the government's place when he seeks to enforce it. The government's "'[m]ere approval of or acquiescence in the initiatives of a private party' is insufficient" to subject the private party to liability as a government actor. Cox v. Duke Energy Inc., 876 F.3d 625, 633 (4th Cir. 2017) (quoting DeBauche v. Trani, 191 F.3d 499, 507 (4th Cir. 1999) (quoting Blum v. Yaretsky, 457 U.S. 991, 1004 (1982))). The Supreme

26

Court has "never held that the mere availability of a remedy for wrongful conduct, even when the private use of that remedy serves important public interests, so significantly encourages the private activity as to make the [government] responsible for it." Am. Mfs. Mut. Ins. Co., 526 U.S. at 52, 53 (determining "whether the State has exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State"). "[A] finding of state action on this basis would be contrary to the 'essential dichotomy' between public and private acts that [the Court's] cases have consistently recognized." Id. (internal citation omitted). In sum, Dr. Okeiyi should have asserted her constitutional challenge against a defendant other than Plaintiff.[8] This counterclaim is also dismissed.

IV.

Pursuant to Rules 12(b)(1) and 12(b)(6), Plaintiff also moves to dismiss counterclaims alleged by Sunday Okeiyi[9] as part of Esther Okeiyi's Second Amended Answer and Counterclaims – a counterclaim for damage to real property (fourth cause of action) and, as Plaintiff explains it, "any additional counterclaims on behalf of Sunday Okeiyi" "the Court interprets the [Second] Amended Answer

---

[8] There is another problem with Dr. Okeiyi's equal protection claim. She has not alleged how she and Plaintiff, or United States citizens and Legal Permanent Residents, are "similarly situated in all relevant aspects".

[9] Sunday Okeiyi is referred to in the counterclaims as "Dr. Okeiyi". Because the Court previously referred to Esther Okeiyi as Dr. Okeiyi and nothing more need be said about Sunday Okeiyi other than in this section addressing his counterclaim(s), he is referred to as Sunday Okeiyi to avoid confusion.

27

as setting forth"[10]. (Mot. to Dismiss Countercls. of S. Okeiyi at 4-5 (alteration in original).)

In support of dismissing the claim for property damage, Plaintiff argues that the "factual nexus between immigration sponsorship and bedroom closets" does not support supplemental jurisdiction over the claim and, even if it did, the statute of limitations bars it. (Id. at 5.) Sunday Okeiyi responds that his counterclaim is permissive pursuant to Rule 20 of the Federal Rules of Civil Procedure because Plaintiff "has made claim to [Sunday] Okeiyi's property on the face of his Complaint". (Mem. of Law in Opp'n to Pl.'s Mot. to Dismiss at 3-9 [Doc. #74].)

Plaintiff is not challenging the propriety of joining Sunday Okeiyi as a counterclaimant under Rule 20, which governs who may join or be joined as a party. (See Text Order (Mar. 3, 2020) (permitting Plaintiff to "move under [Rule] 21 for the Court to drop Sunday Okeiyi as a party or to sever any counterclaim brought by [him]" "[i]f Plaintiff contends that Sunday Okeiyi's joinder as a counterclaimant constitutes misjoinder under [Rules] 19 and/or 20"); Mot. to Dismiss Countercls. of Sunday Okeiyi at 3 ("Plaintiff elected not to contest Sunday Okeiyi's involvement on a procedural basis.").) But, more important, Dr. Okeiyi asserted this same claim for damage to real property. It was determined to be

_____

[10] Plaintiff understandably presents his argument in this way because of the drafting of "Dr. Esther Okeiyi's Counterclaim". (See Text Order (Mar. 3, 2020).) Sunday Okeiyi is clearly named under the heading for the fourth cause of action. He also appears to be the injured party in the twelfth cause of action. But, Dr. Okeiyi, not Sunday Okeiyi, is identified as the injured party in the claim's heading. (See Countercls. ¶¶ 93-97, 143-48.)

Case 1:19-cv-01122-NCT-LPA   Document 109   Filed 07/22/21   Page 28 of 35

permissive, and without a federal question or diversity jurisdiction over it, the counterclaim was dismissed. None of Sunday Okeiyi's arguments require a different outcome. Therefore, his counterclaim for damage to real property is dismissed for lack of jurisdiction.

Plaintiff argues that "any additional counterclaims on behalf of Sunday Okeiyi" "fail as a matter of law for the reasons argued in support of his Motion to Dismiss" Dr. Okeiyi's counterclaims. (Mot. to Dismiss Countercls. of Sunday Okeiyi at 5.) The twelfth cause of action is one for promissory estoppel "as to Dr. Esther Okeiyi". Yet, she is not mentioned once in the allegations in support of that counterclaim. Instead, Sunday Okeiyi is the alleged injured party. (See Countercls. ¶¶ 143-48.) He made no effort to avoid dismissal of this counterclaim in response to Plaintiff's clear statement that he also moves to dismiss any counterclaims the Court determines to be asserted by Sunday Okeiyi. Nevertheless, even had Sunday Okeiyi done so, he could not have avoided dismissal. As with all other state law counterclaims asserted by Sunday Okeiyi and Dr. Okeiyi, this counterclaim is permissive and lacks an independent basis for jurisdiction. It is dismissed.

V.

Plaintiff also moves to dismiss Dr. Asilonu's counterclaim, (The Def.'s Answer to the Compl., Defenses, & Countercls. ("B. Asilonu's Countercls.") [Doc. #71 (redacted version of Doc. #55)]), for the same reasons he contends Dr. Okeiyi's and Sunday Okeiyi's counterclaims must be dismissed – for lack of

29

subject matter jurisdiction and, in the alternative, failure to state a claim for relief. (See Pl.'s Mot. to Dismiss Blessing Asilonu's Countercls. at 3 (notifying the Court that his argument "is substantively identical to that presented in his pending motion to dismiss" Dr. Okeiyi's counterclaims).)

Dr. Asilonu's counterclaim is as follows:

We are requesting $50,000 damages from fraudulent marriage, loss of wages, interference with apartment leases and professional reputation and credibility due to living in public domestic violence shelters for protection, establishing health insurance and care for [her minor child], not having child care and taking my car for business use.

(B. Asilonu's Countercls. at 6.) For the reasons that this Court lacks subject matter jurisdiction over Dr. Okeiyi's and Sunday Okeiyi's state law counterclaims, the Court lacks jurisdiction over Dr. Asilonu's counterclaim, as well, and it is dismissed.

A wrinkle in the clear disposition of Dr. Asilonu's counterclaim is the procedural history of this action and the content of her response to Plaintiff's motion to dismiss. Most of her response appears to be a pleading which restates facts from both her Answer and Counterclaim [Doc. #71] and Dr. Okeiyi's Counterclaims [Doc. #47] and includes many of Dr. Okeiyi's counterclaims against Plaintiff and affirmative defenses [Doc. #47]. (See generally Blessing Asilonu's Resp. to Doc. #102 Mot. to Dismiss Countercl. [Doc. #106].) Dr. Asilonu concludes by citing Rule 15 of the Federal Rules of Civil Procedure and arguing, in part, that her counterclaims "have every reason to be in this federal lawsuit", although it is unclear if she is referring to the counterclaim quoted above or those

30

included in her response in opposition to the motion to dismiss.

To the extent that Dr. Asilonu attempts to amend her counterclaim with the content of her response, she cannot do so. See S. Walk at Broadlands Homeowner's Ass'n, Inc. v. OpenBand at Broadlands, LLC, 713 F.3d 175, 184-85 (4th Cir. 2013) ("It is well-established that parties cannot amend their complaints through briefing or oral advocacy."). Although "a pro se litigant . . . is entitled to liberal construction of his pleadings", Bala v. Va. Dep't of Conservation & Rec., 532 F. App'x 332, 334 (4th Cir. 2013), "liberal construction does not mean overlooking . . . the Federal Rules of Civil Procedure," Bing v. Brivo Sys., LLC, 959 F.3d 605, 618 (4th Cir. 2020); see also M.D.N.C. LR 11.1(a) ("Any individual representing himself or herself without an attorney is bound by the Federal Rules of Civil . . . Procedure, this Court's Local Rules, and all other applicable law."). Previously in this action, Dr. Asilonu filed a response that was substantively an amended answer and counterclaims. (See Mem. Op. & Order at 11 ("Mar. 2021 Mem. Op.") [Doc. #100] (describing Doc. #92).) The Court construed that filing "as an attempt to amend the Amended Answer" and determined that "the Response cannot stand." (Id.) Once again construing Dr. Asilonu's response to Plaintiff's motion to dismiss as an attempt to amend her answer and counterclaim, it "cannot stand" for the same reasons her earlier attempt could not – she has not complied with Rule 15 which governs the process for amendment. (See id. at 11-12 (striking the Response).)

31

VI.

Plaintiff also moves for an order dismissing Dr. Asilonu pursuant to Rule 41(a)(2) of the Federal Rules of Civil Procedure. Plaintiff named Dr. Asilonu as a defendant in this action "to avoid any procedural argument that she was a necessary party", but he had assessed prior to initiating this action that she "was likely judgment proof". (Decl. of Greg McLawsen in Supp. of Pl.'s Mot. to Dismiss Def. Blessing Asilonu ¶¶ 2-3 (June 11, 2020) [Doc. #83].) At the time of Plaintiff's motion, several other motions were pending, including defense counsel's motion to appoint a guardian ad litem for Dr. Asilonu and Plaintiff's motion for an order withdrawing Dr. Asilonu's counsel. They opposed dismissing her from the action while those motions remained unresolved. (See Resp. to Pl.'s Mot. for Order of Withdrawal & Mot. to Dismiss Def. Blessing Asilonu at 8-10 [Doc. #85]). Now, though, all requisite questions have been answered. All that remains as to Dr. Asilonu is Plaintiff's breach of contract claim against her.

According to Rule 41(a)(2),

[e]xcept as provided in Rule 41(a)(1) [permitting dismissal without a court order under certain conditions], an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper. If a defendant has pleaded a counterclaim before being served with the plaintiff's motion to dismiss, the action may be dismissed over the defendant's objection only if the counterclaim can remain pending for independent adjudication. Unless otherwise specified in the order, a dismissal under this paragraph is without prejudice.

"The purpose of Rule 41(a)(2) is freely to allow voluntary dismissals unless the parties will be unfairly prejudiced." Davis v. USX Corp., 819 F.2d 1270, 1273 (4th

32

Cir. 1987); see also Andes v. Versant Corp., 788 F.2d 1033, 1036 (4th Cir. 1986)

("[D]ismissal without prejudice should not be denied absent substantial prejudice to

the defendant."). Factors guiding a court's assessment of a Rule 41(a)(2) motion

include "(1) the opposing party's effort and expense in preparing for trial; (2)

excessive delay or lack of diligence on the part of the movant; (3) insufficient

explanation of the need for a dismissal; and (4) the present stage of the litigation,

i.e., whether a dispositive motion is pending." Hobbs v. Kroger Co., 175 F.3d

1014, 1999 WL 156045, at *1 (4th Cir. Mar. 23, 1999) (unpublished Table

decision) (citing Phillips USA, Inc. v. All-flex USA, Inc., 77 F.3d 354, 358 (10th

Cir. 1996) & Paulucci v. City of Duluth, 826 F.2d 780, 783 (8th Cir. 1987)).

Were Plaintiff's motion to dismiss his claim against Dr. Asilonu granted, she

would suffer no prejudice. Her then-counsel's motion for appointment of a

guardian ad litem for Dr. Asilonu was denied, (Mem. Op. & Order (Feb. 1, 2021)

[Doc. #90]), and her counsel have withdrawn, (Order (July 6, 2021) [Doc. #108]).

Dr. Asilonu has no remaining counterclaims against Plaintiff. No scheduling order

has been entered, and, thus, no discovery has commenced. And, Dr. Okeiyi has

filed no objection.

In addition, at least as early as March 2020, Plaintiff communicated to Dr.

Asilonu's then-counsel his desire to voluntarily dismiss her and renewed the offer

"many times", but her counsel "never accepted" his proposal. (Decl. of McLawsen

¶ 5; see also Decl. of McLawsen, Ex. 1 (Emails from McLawsen to then-defense-

counsel (Mar. 10 & Mar. 12, 2020)).) On her own, in April 2020, Dr. Asilonu

33

emailed Plaintiff's counsel of her consent to dismissal if she could receive

assistance dismissing her counterclaims, apparently because she had terminated

her counsel "because of their unwillingness to negotiate the settlement." (Decl. of

McLawsen, Ex. 1 (Email from Dr. Asilonu to Plaintiff's counsel (Apr. 28, 2020));

see also Ex. 1, Decl. of McLawsen (Emails from Dr. Asilonu to Plaintiff's counsel

(May 7, 2020), from Plaintiff's counsel to Dr. Asilonu's then-counsel (May 14 &

May 15, 2020), from Dr. Asilonu to Plaintiff's counsel (May 15, 2020).) In sum,

Dr. Asilonu suffers no prejudice, much less substantial prejudice, from the

dismissal of Plaintiff's claim against her. The motion is granted.

VII.

For the reasons explained in this Memorandum Opinion, IT IS HEREBY

ORDERED that:

(1) Plaintiff's Revised Motion for Partial Judgment on the Pleadings Against Defendant Esther Okeiyi [Doc. #37] is GRANTED IN PART and DENIED IN PART;

(2) Plaintiff's Motion to Dismiss for Failure to State a Claim Against Defendant Esther Okeiyi [Doc. #38] is DENIED AS MOOT;

(3) Plaintiff's Amended Motion to Dismiss for Failure to State a Claim Against Defendant Esther Okeiyi [Doc. #40] is GRANTED;

(4) Plaintiff's Motion to Dismiss Counterclaims of Sunday Okeiyi [Doc. #70] is GRANTED;

(5) Plaintiff's Motion to Dismiss Counterclaims in Answer of Defendant Blessing

Asilonu (Dkt 55) [Doc. #102] is GRANTED; and

(6)  Plaintiff's Motion to Dismiss Defendant Blessing Asilonu [Doc. #82] is

GRANTED.

This the 22nd day of July, 2021.

/s/ N. Carlton Tilley, Jr.
Senior United States District Judge
