IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| ANORUO U. ASILONU, an individual ) | |
| ) | |
| Plaintiff, ) | |
| v. ) | |
| ) | |
| BLESSING ASILONU, an individual, ) | 1:19CV1122 |
| and ESTHER OKEIYI, an individual ) | |
| and her marital community, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM ORDER**

This matter is before the Court on a Motion for Sanctions [Doc. #91] filed on behalf of Defendant Blessing Asilonu ("Dr. Asilonu") by her then-counsel, although a portion of counsel's argument in support of the motion involves their other client in this matter, Esther Okeiyi ("Dr. Okeiyi"). For the reasons explained below, the motion is denied.

The instant motion was filed by Mary Nnene Okeiyi ("Ms. Okeiyi") and Jocelyn Davis Singletary ("Ms. Singletary") (collectively "defense counsel") who no longer represent Dr. Asilonu who is proceeding pro se. The question of Dr. Asilonu's representation has been ongoing throughout this action. And, it is at the heart of this motion for sanctions. As a final twist, Dr. Asilonu is no longer a party to this action because Plaintiff's motions to dismiss her counterclaim and her as a party were granted.

Defense counsel allege that Plaintiff's counsel violated Rule 4.2 of the Rules of Professional Conduct of the North Carolina State Bar and related Local Rules of

Practice and Procedure by communicating directly with Dr. Asilonu and Dr. Okeiyi, represented parties. Defense counsel request a finding that Plaintiff's counsel violated Rule 4.2 and made false and misleading statements of material fact, a requirement that Plaintiff's counsel produce any information obtained during communication with Drs. Asilonu and Okeiyi, a prohibition on the use of that information at trial, reimbursement of defense counsel's reasonable attorney's fees and expenses incurred in connection with this motion, fines imposed on Plaintiff's counsel, a reprimand, and notice to the Clerk.

In support of their motion, defense counsel submitted eighteen exhibits, two of which are copies of communications from Plaintiff's counsel to Drs. Okeiyi and Asilonu: (1) a January 13, 2020 email from Plaintiff's counsel to Drs. Okeiyi and Asilonu forwarding a copy of Plaintiff's motion to enjoin Dr. Asilonu that was filed that day (Mot., Ex. 1) and (2) a February 1, 2021 email from Plaintiff's counsel to Dr. Asilonu informing her that "the court today has allowed you to proceed as a pro se defendant" and reminding her of the pending offer for Plaintiff and Dr. Asilonu to dismiss their claims against each other (Mot., Ex. 10).

Subject to an exception not relevant here, during the representation of a client, a lawyer cannot communicate about the subject of that representation with a person the lawyer knows is represented by counsel in the matter without the other lawyer's consent or legal authorization. 27 N.C. Admin. Code 02 Rule 4.2(a). This is true "even though the represented person initiates or consents to the communication." Id. Rule 4.2, cmt. 8. Importantly,

2

> [t]his Rule contributes to the proper functioning of the legal system by protecting a person who has chosen to be represented by a lawyer in a matter against possible overreaching by other lawyers who are participating in the matter, interference by those lawyers with the client-lawyer relationship[,] and the uncounsel[]ed disclosure of information relating to the representation.

Rule 4.2, cmt. 1. See also Adkins v. United States, No. 3:16-cv-189-RJC, 2018 WL 7283323, at *5 (W.D.N.C. Aug. 7, 2018) (noting the "rationales" for this prohibition include "preventing an attorney from circumventing opposing counsel to obtain unwise statements from an adverse party"). However, if a lawyer does not have "actual knowledge of the fact of the representation", he is not prohibited from communicating with the individual. Rule 4.2, cmt. 10. But, "such actual knowledge may be inferred from the circumstances"; "the lawyer cannot evade the requirement of obtaining the consent of counsel by closing eyes to the obvious." Id.

This court has adopted North Carolina's Rules of Professional Conduct as its own Code of Professional Responsibility, except as otherwise provided by a specific Local Rule. R. of Practice & Procedure of the M.D.N.C. ("Local Rules") 83.10e(b). "[W]hile a federal court may adopt state rules of professional conduct, the application of those rules is a question of federal law and state court interpretations are not binding." Howard v. College of the Albemarle, No. 2:15-CV-00039-D, 2016 WL 4384658, at *4 n.4 (E.D.N.C. Aug. 16, 2016).

"Ethical violations may result in sanctions such as disqualification of counsel, divulging the contacts, prohibiting their use as admissions, and imposing

monetary sanctions." Adkins, 2018 WL 7283323, at *4 (citing McCallum v. CSX Transp., Inc., 149 F.R.D. 104, 111 (M.D.N.C. 1993)); see also In re Liotti, 667 F.3d 419, 426 (4th Cir. 2011) (applying the American Bar Association Standards for Imposing Lawyer Sanctions ("ABA Standards") to an appellate disciplinary proceeding and describing "[t]he panoply of available sanctions for attorney misconduct" once proven by clear and convincing evidence as including "disbarment, suspension, fine, public reprimand, and private reprimand"); Local R. 83.4 (providing for sanctions for violation of a local rule and factors to consider before imposition of sanctions); Local R. 83.10e (providing for disciplinary actions for misconduct). The purpose of these sanctions is to "protect the public and the administration of justice". In re Liotti, 667 F.3d at 430-31 (quoting ABA Standards § 1.1).

However, "even if an ethical violation [has] occurred, the lack of any apparent harm or prejudice resulting from the allegedly unethical contact" "doom[s]" a motion for sanctions. United States v. Johnson, 122 F. Supp. 3d 272, 346 (M.D.N.C. 2015) (assessing alleged violation of Rule 4.2 and citing United States v. Quest Diagnostics Inc., 734 F.3d 154, 167 (2d Cir. 2013) & McCallum, 149 F.R.D. at 113).

Ms. Singletary entered a notice of appearance on December 13, 2019 for Dr. Okeiyi, [Doc. #6]. Therefore, when Plaintiff's counsel emailed Dr. Okeiyi on January 13, 2020, they had actual knowledge that Dr. Okeiyi was a represented

4

party[1], and there is no evidence or argument that they had Ms. Singletary's consent or other authorization to communicate with her. The following day, Plaintiff's counsel emailed Ms. Singletary forwarding "the email that was sent yesterday to [her] client by mistake" and noting that "[i]t clearly should have been emailed to [Ms. Singletary] instead." (Mot., Ex. 4.)

Despite Plaintiff's counsel's communication with Dr. Okeiyi, she suffered no prejudice. The contents of the email did not pertain in any way to Dr. Okeiyi and, even had they, the email was simply forwarding a courtesy copy of a document filed with the court. Nothing about the communication evidences Plaintiff's counsel's overreaching, interference, or effort to obtain uncounseled disclosure of information. Therefore, this conduct is not sanctionable.

On January 23, 2020, Ms. Singletary and Ms. Okeiyi made an appearance on Dr. Asilonu's behalf, [Doc. #25]. Therefore, Dr. Asilonu was not represented in this matter when Plaintiff's counsel emailed her on January 13, 2020. However, it appears as though she was represented when Plaintiff's counsel emailed her on February 1, 2021.

Setting aside for the moment that defense counsel remained Dr. Asilonu's counsel of record until July 6, 2021, see Local R. 83.1(e)(1), (3) (requiring leave of the court to withdraw), whether Dr. Asilonu was moving forward with counsel was

---

[1] Just one hour and twenty-five minutes before Plaintiff's counsel emailed Dr. Okeiyi, Ms. Okeiyi filed an improper notice of appearance on her behalf that was stricken the following day. (See [Doc. #13].) It was not until January 17, 2020 that Ms. Okeiyi filed the proper notice of appearance. (See [Doc. #20].)

unsettled almost from the beginning of this action, at least according to her filings and communications.

For example, on March 10, 2020, defense counsel notified the Court that Dr. Asilonu had fired them on March 1, 2020. (See Mot. ¶ 4 [Doc. #48].) Then, on May 4, 2020, Dr. Asilonu opposed defense counsel's motion for appointment of a guardian ad litem in part because she had informed them that their "services were no longer needed for the case because [she] was interested in negotiating the settlement fee and the counterclaim with the plaintiff and ending the case" while her counsel "was more interested in establishing the validity of the plaintiff's breach of contract claim." (See Mot. at 2[2] [Doc. #67].) The following month she filed another response in opposition to the motion for a guardian ad litem in which she stated, "**I have a legal right to represent myself** . . .", requested the court "to formally dismiss [her counsel] from [her] case because **they do not respect me as their client and have never listened to any request made by me as their client**", and, in response to defense counsel's statement that Dr. Asilonu had reengaged them, she requested that the court have defense counsel provide documentation that she had in fact reengaged them "after dismissing them in March via email and phone discussion." (See Def.'s Resp. at 1, 4 [Doc. #80].) She also requested that, as a pro se party, she have the court's permission to file materials in this matter electronically. (Id. at 4.)

---

[2] This is the page number generated by CM/ECF.

Despite what appears to be Dr. Asilonu's termination of her counsel, they never moved to withdraw, see Local R. 83.1(e)(1), (3). Instead, on February 25, 2021, they moved for an extension of time for her to respond to a motion to strike, because on February 21, 2021, she "indicated her desire to have [them] file a response on her behalf", (see Mot. ¶ 8 [Doc. #95]). They remained her counsel until July 6, 2021 when their May 5, 2021 motion to withdraw was granted. (See Order [Doc. #108].)

Plaintiff's counsel's February 1, 2021 email to Dr. Asilonu was a prohibited communication with a represented party. They understood the Court's Memorandum Opinion and Order issued the same day – which denied defense counsel's request for appointment of a guardian ad litem – to be something it was not. (See Mot., Ex. 1 ("As you might already know, the court today has allowed you to proceed as a pro se defendant."); Mot., Ex. 12 (responding to defense counsel's message that Dr. Asilonu is still represented after the Court's order, "Our understanding of the Judge's ruling is different, and we stand behind our understanding").

The Local Rules of this Court, with which every attorney is expected to be familiar, require that an attorney who has made an appearance seek leave of the Court to withdraw. Local R. 83.1(e)(1), (3) ("No attorney who has entered an appearance in any civil . . . action shall be permitted to withdraw an appearance, or have it stricken from the record, except on order of the Court . . ."; "In cases where withdrawal is sought without substitution of counsel, an attorney must seek

7

leave of court by filing a motion to withdraw.")  Without such an order, defense counsel remained counsel of record for Dr. Asilonu when Plaintiff's counsel emailed her.

Nevertheless, there is no indication that Plaintiff's counsel would have communicated their offer to settle directly to Dr. Asilonu had they understood her to be represented.  Evidence presented by defense counsel shows that even when Dr. Asilonu professed in the spring and summer of 2020 that they no longer represented her, Plaintiff's counsel did not respond to the emails she wrote them and instead forwarded the emails to her counsel. (See Mot., Exs. 13, 14, 15; see also Mot., Ex. 18.)  Indeed, this is what the Rules require. See 27 N.C. Admin. Code 02 Rule 4.2, cmt. 8 ("The Rule applies even though the represented person initiates or consents to the communication.").  And, according to Plaintiff's counsel, they did not communicate with Dr. Asilonu after their February 1 email. (Decl. of Greg McLawsen ¶ 11 (Feb. 24, 2021) [Doc. #94].)

Furthermore, Dr. Asilonu had expressed her desire to be released from this action, yet, according to her, defense counsel would not permit settlement.  The February 1, 2021 communication reminded her of Plaintiff's pending offer to dismiss his claim against her.  Mistakenly believing defense counsel no longer represented Dr. Asilonu after the Court's February 1 order, perhaps the better action for Plaintiff's counsel would have been to inquire of defense counsel or Dr. Asilonu if she was in the process of obtaining new counsel.  Two months later, Plaintiff moved to dismiss Dr. Asilonu's counterclaim, having previously moved to

8

dismiss her altogether as a party. (See [Docs. #82, 102].)  Both motions were granted on July 22, 2021.  Nothing before the Court evidences prejudice to Dr. Asilonu as a result of Plaintiff's counsel's February 1, 2021 email to her.  Therefore, they will not be sanctioned for this communication.

For the reasons stated in this Memorandum, IT IS HEREBY ORDERED that the Motion for Sanctions [Doc. #91] is DENIED.

This the 23rd day of July, 2021.

/s/ N. Carlton Tilley, Jr.
Senior United States District Judge