IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| ANORUO U. ASILONU, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:19-CV-1122 |
| | ) | |
| ESTHER OKEIYI, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Catherine C. Eagles, District Judge.

The plaintiff, Anoruo Asilonu, alleges that the defendant, Dr. Esther Okeiyi, signed a Form I-864 to serve as a financial sponsor for Mr. Asilonu, who sought to immigrate to the United States. If she did sign and submit this form, then by statute she assumed a contractual obligation to maintain the plaintiff at an annual income of at least 125% of the federal poverty line. *See* 8 U.S.C. § 1183a(a)(1). The plaintiff has sued the defendant for breaching her promise to support him during 2017, 2018, and 2019.

The plaintiff contends that "income" means federally taxable income. *See* Doc. 185 at 1; Doc. 166 at 6–7. The defendant, on the other hand, contends that "income" means "gross income," Doc. 187 at 2–4, and "any and all income," Doc. 190 at 2, taking into account "income from wages and employment, educational scholarships and grants, alimony, housing subsidies, and any other direct financial benefits received." Doc. 167 at 26. Each side has filed a motion *in limine* seeking to exclude evidence inconsistent with

or admit evidence consistent with their view of the law. *See* Docs. 184, 186. This dispute also shows up in the parties' proposed jury instructions. *See* Docs. 166–167.

I.  **The Statute, Regulations, and Case Law**

In evaluating requests to enter this country, Congress has provided that "[a]ny alien who . . . is likely at any time to become a public charge is inadmissible." 8 U.S.C. § 1182(4)(A). In determining whether an alien is likely to become a public charge, the deciding official may consider, among other things, an "affidavit of support," if one is filed. 8 U.S.C. § 1182(4)(B)(ii). The deciding official may not accept an affidavit of support unless the "affidavit is executed by a sponsor of the alien as a contract in which the sponsor agrees to provide support to maintain the sponsored alien at an annual income that is not less than 125 percent of the Federal poverty line" and the affidavit "is legally enforceable against the sponsor by the sponsored alien." 8 U.S.C. § 1183a(a)(1)(A)–(B) (cleaned up). The purpose "of the sponsorship-scheme is to guarantee that aliens will be self-sufficient and not impose any meaningful burden on the public." *CASA de Md., Inc. v. Trump*, 971 F.3d 220, 243 (4th Cir. 2020) (cleaned up).[1]

In other words, by signing an affidavit of support, the sponsor—Dr. Okeiyi, as alleged here—agrees to support the immigrant—Mr. Asilonu here—at "an annual income" of 125% of the federal poverty line for the relevant time period. *See, e.g.*, *Younis v. Farooqi*, 597 F. Supp. 2d 552, 554 (D. Md. 2009); *Song v. Garland*, 54 F.4th 233, 234 n.2 (4th Cir. 2022).

---

[1] The court granted rehearing *en banc*, 981 F.3d 311 (4th Cir. 2020), but the docket reflects the case was later dismissed before rehearing. No. 19-2222, Doc. 211 (4th Cir. Mar. 11, 2021).

The specific statute creating the sponsorship scheme uses but does not explicitly define the word "income," 8 U.S.C. § 1183a(a)(1)(A), nor does the general definitions section define the word "income." *See* 8 U.S.C. § 1101.[2] And while the statute refers to "the Federal poverty line," 8 U.S.C. § 1183a(a)(1)(A), the regulations that establish the poverty line do not define the word "income." Indeed, the regulatory notices setting the poverty line for the relevant years explicitly say they do not define "income" because of the "considerable variation in defining" the term "among the different programs that use the guidelines."[3] The notices state that questions such as "[i]s income counted before or after taxes?" or "[s]hould a particular type of income be counted?" will arise but "should be directed to the entity that administers . . . the program, since that entity has the responsibility for defining such terms as 'income'" if it is "not already defined for the program in legislation or regulations."[4] Unfortunately, the applicable regulations for sponsorship affidavits do not explicitly define the word "income" either, at least not as it concerns the sponsored immigrant. *See* 8 C.F.R. § 213a.1.

---

[2] The sponsorship statute is not the only statute which does not define the term "income," a problem which bedevils courts in many contexts. *See, e.g.*, *In re Lewis*, 401 B.R. 431, 440 (Bankr. C.D. Cal. 2009).

[3] Annual Update of the HHS Poverty Guidelines, 82 Fed. Reg. 8831-03, 2017 WL 395763 (Jan. 31, 2017); *see also* Annual Update of the HHS Poverty Guidelines, 83 Fed. Reg. 2642-01, 2018 WL 451905 (Jan. 18, 2018); Annual Update of the HHS Poverty Guidelines, 84 Fed. Reg. 1167-02, 2019 WL 399312 (Feb. 1, 2019).

[4] *See supra* note 3.

3

Courts have addressed the absence of an explicit definition in different ways. But most courts agree that loans do not qualify as income,[5] that gross income is not the appropriate test and that any expenses the immigrant incurred to earn money should be deducted,[6] and that division of marital property does not qualify as income.[7]

Courts have reached different results in considering whether other items qualify as income.[8] Courts largely follow one of two approaches: one, adopting the definition of "income" in the regulations that establish how to calculate whether the sponsor makes enough money to support the immigrant, or two, deciding whether particular items should

---

[5] *See Shumye v. Felleke*, 555 F. Supp. 2d 1020, 1025 (N.D. Cal. 2008) (noting that student loans are "a form of debt" that must be repaid and do not count as income); *Anderson v. Anderson*, 840 F. App'x 92, 95 & n.2 (9th Cir. 2020) (unpublished memorandum) (concluding that the district court did not err by instructing the jury that educational grants qualify as income but student loans do not); *Al-Mansour v. Shraim*, No. 10-CV-1729, 2011 WL 1457102, at *3 (D. Md. Apr. 14, 2011) (concluding that monetary support provided "with the expectation of being repaid in the future" qualifies as a debt and not income).

[6] *See Pelc v. Pham*, 883 S.E.2d 634, 644 (N.C. Ct. App. 2023) (holding that the trial court did not err by deducting incurred expenses from the plaintiff's income); *Villars v. Villars*, 336 P.3d 701, 712–13 (Alaska 2014) (applying IRS rules to determine whether a tax credit qualifies as income and noting that the IRS "defines taxable income as gross income minus deductions" (cleaned up)).

[7] *See Shumye*, 555 F. Supp. 2d at 1025 (noting that division of marital property represents the plaintiff's "existing assets" and does not count as earned income); *Yuanjie Du v. McCarthy*, No. 14-CV-100, 2017 WL 5629641, at *3 n.1 (N.D.W. Va. June 20, 2017) ("Division of marital property in family court proceedings does not qualify as income"), *aff'd*, 710 F. App'x 611 (4th Cir. 2018) (per curiam) (unpublished); *Toure-Davis v. Davis*, No. 13-CV-916, 2015 WL 993575, at *7–8 (consulting IRS rules and holding that "settlement of all property claims incident to [the parties'] marriage" was not income).

[8] *Compare, e.g.*, *Erler v. Erler (Erler II)*, 798 F. App'x 150, 151 (9th Cir. 2020) (unpublished memorandum) ("Means-tested public benefits, such as food stamps, are income to the recipient even if they are non-taxable for the purposes of federal income tax reporting."), *with Flores v. Flores*, 590 F. Supp. 3d 1373, 1382 (W.D. Wash. 2022) (concluding that "public assistance afforded to [the plaintiff's] household [was] not taxable income" and did not reduce the amount the sponsor owed).

4

or should not count as "income" on a case-by-case basis, typically in a more expansive manner than that in the regulation applicable to sponsors.[9]

As to the first approach, there are specific regulations governing affidavits of support such as the one Dr. Okeiyi signed here. 8 C.F.R. § 213a.1 *et seq*. To determine whether a citizen has sufficient means to sponsor an immigrant, those regulations define income as "an individual's total income[10]. . . for purposes of the individual's U.S. Federal income tax liability." 8 C.F.R. § 213a.1. In the absence of an explicit definition for determining the immigrant's income, several courts have applied this definition.[11]

The second approach is to define income without reference to the definition in the regulations and to determine whether particular resources should be considered as income in light of the statute's purpose of preventing immigrants from becoming public charges. In applying this more policy-based approach, some courts have explicitly rejected the § 213a.1 definition, noting that § 213a.1 only applies to determine whether a citizen is eligible to sponsor an immigrant and should not be used to calculate the sponsored

---

[9] As best the Court can tell, there are no cases dealing with evidentiary issues over what is income in cases arising from I-864 affidavits, and only one case deals with jury instructions. *See Anderson*, 840 F. App'x at 94–96. Most cases seem to arise in the context of summary judgment, and many involve *pro se* litigants.

[10] The regulation also refers to total income as "adjusted gross income for those who file IRS Form 1040EZ," 8 C.F.R. § 213a.1, but that possibility is not relevant here.

[11] *See Flores*, 590 F. Supp. 3d at 1382; *Sultana v. Hossain*, 575 F. Supp. 3d 696, 699 (N.D. Tex. 2021); *Fukita v. Gist*, No. 20-CV-1869, 2021 WL 288121, at *5 (D. Minn. Jan. 28, 2021); *Villars*, 336 P.3d at 712–13; *Love v. Love*, 33 A.3d 1268, 1277 & n.7 (Pa. Super. Ct. 2011).

immigrant's annual income.[12]  But other courts, including district courts in this circuit, have not mentioned the definition in § 213a.1, much less explicitly rejected it.[13]

The only circuit court authority on the definition of income comes from the Ninth Circuit, which has addressed the issue three times.  In a reported case, the Ninth Circuit reviewed the district court's grant of summary judgment to a defendant-sponsor.  *Erler v. Erler (Erler I)*, 824 F.3d 1173 (9th Cir. 2016).  The district court concluded that the sponsor had not breached his obligation to support the immigrant because the immigrant moved in with her adult son who had an annual income greater than 125% of the federal poverty line.  *Id.* at 1175–76.  The Ninth Circuit vacated the court's order, holding in part that "[w]hen measuring the immigrant's income, the court must disregard the income of anyone in the household who is not a sponsored immigrant."  *Id.* at 1180.  The court noted that while § 213a.1 defines income for the sponsor, it does not define income for

---

[12] *See Tsanev v. Tsanev*, No. 21-CV-1667, 2022 WL 3566759, at *4–6 (W.D. Wash. Aug. 18, 2022); *Erler II*, 798 F. App'x at 150–51 (finding that § 213a.2(c) "applies only to determine whether a sponsor's household income is sufficient to sponsor an immigrant, not to calculate the sponsored immigrant's income post-separation" and concluding that a foreign pension and food stamps were "income"); *Dahhane v. Stanton*, No. 15-CV-1229, 2016 WL 4257536, at *4 (D. Minn. Aug. 12, 2016).

[13] Brief summaries of these cases show that they raise a variety of questions about income. *See, e.g.*, *Shumye*, 555 F. Supp. 2d at 1025–27 (holding that a divorce settlement and student loans did not qualify as income but that educational grants and housing subsidies did qualify as income); *Yuanjie Du*, 2017 WL 5629641, at *2 (discussing whether the sponsor should receive credit for paying rent, phone, and internet bills without discussing how to calculate the immigrant's income); *Toure-Davis*, 2015 WL 993575, at *8 (relying on IRS rules to conclude that a property settlement in a divorce was not income); *id.* at *8–9 (without relying on IRS rules, concluding that the value of housing received in exchange for house cleaning work was income and that the defendant was further entitled to a credit for paying the mortgage on a home where the plaintiff lived for a time); *Younis*, 597 F. Supp. 2d at 555 (finding that child support payments were not income).

6

the sponsored immigrant. *Id.* at 1177. But the court did not specifically address whether it would be appropriate to adopt the definition in § 213a.1.

Later in the same case, appealed again after remand, the Ninth Circuit in an unpublished opinion reviewed the district court's decision to reduce the defendant's liability by amounts the immigrant received in food stamps and from a foreign pension. *Erler v. Erler (Erler II)*, 798 F. App'x 150 (unpublished memorandum). The immigrant argued in part that the food stamps and foreign pension did not qualify as income because they were non-taxable under § 213a. *Id.* at 150–51. The Ninth Circuit rejected her argument, concluding that § 213a "applies only to determine whether a sponsor's household income is sufficient to sponsor an immigrant, not to calculate the sponsored immigrant's income." *Id.* at 150. The court held that the pension was income without much discussion other than to reject the plaintiff's argument and to note that the plaintiff had control over the pension. *Id.* at 151. The court also held that food stamps were income since the statute specifically states that the entity providing the public benefits can seek reimbursement from the sponsor for the value of the benefits provided to the sponsored immigrant. *Id.*

Finally, in another unpublished opinion, the Ninth Circuit reviewed a district court's jury instructions on how to calculate a sponsored immigrant's income. *Anderson*, 840 F. App'x 92. The district court instructed the jury "that in addition to wages and cash payments," "income includes property, services, gifts, or educational grants and constructively-received income." *Id.* at 94 (cleaned up). The Ninth Circuit agreed that income appropriately includes educational grants but held that the district court erred by

7

including "constructively-received income," and that health insurance benefits and a judgment the sponsor had obtained against the immigrant should not have been considered as income. *Id.* at 95. The court "recognize[d] the lack of precedential authority defining 'income' in this context," but it found that "establishing a uniform definition [was] unnecessary to resolve this appeal" and declined the plaintiff's "invitation to restrict 'income' to the definition set forth in 8 C.F.R. § 213a.1." *Id.*

Since *Anderson* and *Erler II*, district courts in the Ninth Circuit have gone both ways. One court recently concluded that the definition in § 213a.1 should apply, finding that *Anderson* and *Erler II* are not precedential authority and that there was no compelling reason to discard the regulatory definition. *See Flores*, 590 F. Supp. 3d at 1381–82. A different judge on the same court concluded later that the definition in § 213a.1 should not apply and that *Anderson* and *Erler II*, while nonbinding, were "persuasive in light of the majority of federal courts that have also declined to restrict a sponsored immigrant's income to only their taxable income." *Tsanev*, 2022 WL 3566759, at *6.

## II. Discussion

The dispute here arises over (1) expenses the plaintiff incurred in order to work as a Lyft and Uber driver, (2) scholarships, grants, and student loans the plaintiff received, and (3) financial assistance the plaintiff received from a church. As best the Court can tell, the parties do not disagree over any other categories of funds.

The definition of "income" in § 213a.1 is the appropriate starting point. Although § 213a.1 is within a section entitled "Affidavits of Support on Behalf of Immigrants,"

8

another regulation within the same section uses "income" to refer to the sponsored immigrant's income. *See* 8 C.F.R. § 213a.2(c)(2) ("In order for the intending immigrant to overcome the public charge ground of inadmissibility, the sponsor must demonstrate the means to maintain the intending immigrant at an annual income of at least 125 percent of the Federal poverty line."). The Affidavit of Support also incorporates § 213a by reference. *See* Doc. 1-3 at 7 ("If you sign Form I-864 on behalf of any person . . . and that intending immigrant submits Form I-864 to the U.S. Government with his or her application for an immigrant visa or adjustment of status, under INA section 213A, these actions create a contract between you and the U.S. Government.").

As the Supreme Court has repeatedly said in construing statutes, if a word or phrase means one thing in part of the statute, it generally means the same thing in another.[14] Courts "normally construe regulations using the same rules [they] employ to construe statutes." *Harris v. Norfolk S. Ry. Co.*, 784 F.3d 954, 962 (4th Cir. 2015). This test has the advantage of being relatively straightforward to apply, without the need to delve into the policy reasons for the sponsorship requirement or to develop a new world

---

[14] *See Branch v. Smith*, 538 U.S. 254, 281 (2003) (quoting *United States v. Freeman*, 44 U.S. 556, 564–65 (1845)); *see also Gen. Dynamics Land Sys., Inc. v. Cline*, 540 U.S. 581, 596 (2004) ("[S]tatutory language must be read in context since a phrase gathers meaning from the words around it." (cleaned up)); *Motion Picture Ass'n of Am., Inc. v. FCC*, 309 F.3d 796, 801 (D.C. Cir. 2002) ("Statutory provisions *in pari materia* normally are construed together to discern their meaning." (citing *Erlenbaugh v. United States*, 409 U.S. 239, 244 (1972))).

of case law defining "income" under the statute. Deference to a reasonable definition in the regulations is also usually appropriate in the immigration context.[15]

In contrast, there is not a good reason to reject the regulatory definition, at least in most situations. There are a myriad of ways to define "income," making consistency difficult. The policy and "statutory purpose" arguments used by courts that do not apply the regulatory definition can often support either result, if they are fleshed out. And the "any and all income" definition proposed by the defendant is not much of a definition, relying instead on a list of items she says should count as income and leaving a jury without legal mooring or meaningful guidance. Nothing else appearing,[16] the definition in the regulation is appropriate. *See generally Flores*, 590 F. Supp. 3d at 1382.

The Court appreciates the cases to the contrary. But none have precedential value, many involved *pro se* litigants and little to no consideration of the regulation, and the one published appellate case is not on point.

The defendant contends that the plaintiff has "presented not a single case in which the [c]ourt has found that" the definition of income in § 213a.1 "applies to both the incomes of the sponsor and the sponsored immigrant." Doc. 190 at 3. This is incorrect. The plaintiff has identified at least five cases where courts have adopted the definition in

---

[15] *See Scialabba v. Cuellar de Osorio*, 573 U.S. 41, 56–57 (2014) ("[J]udicial deference to the Executive Branch is especially appropriate in the immigration context."); *Song*, 54 F.4th at 237 (applying regulations to fill in statutory gaps and resolve ambiguities).

[16] There may be a reason for a court to consider a particular resource as income even if it is not taxable; the court's discussion on food stamps in *Erler II*, for example, is based on statutory considerations. *Erler II*, 798 F. App'x at 151.

§ 213a.1 to calculate the annual income of the sponsored immigrant.  *See* Doc. 185 at 4 n.16; *see also supra* note 11.

The defendant also relies on various definitions of "income" in regulations and federal publications concerning other programs using the federal poverty level guidelines. But there is nothing to indicate that Congress meant to adopt any particular one of those definitions for the statute at issue here.  And, as previously noted, the notices that set the federal poverty line for the relevant years explicitly say that they do not define the term "income" because of the "considerable variation in defining" the term "among the different programs that use the guidelines."  *See supra* note 3.

The regulation says income means "total income . . . for purposes of the individual's U.S. Federal income tax liability."  8 C.F.R. § 213a.1.  To the extent this is what the plaintiff means by "taxable income," the Court generally agrees.

### A. "Gross Income" v. "Net Income"

Whether the Court follows the definition in § 213a.1 or a more policy-driven approach, the "gross income" test proposed by the defendant, Doc. 187 at 2–4, is inappropriate.  It seems obvious that if one must buy gasoline to drive for Lyft or Uber, then courts should not count that expense as income.  Such expenses are deductible and excluded from the "total income" definition referenced in § 213a.1.  The logic behind the cases that apply the policy-based approach is also consistent with the view that such expenses should be deducted, as the money is not available for the immigrant to spend on housing, food, clothing, and other basic necessities that prevent the immigrant from

11

becoming a "public charge." *See Tsanev*, 2022 WL 3566759, at *5. The defendant cites no cases that apply a "gross income" test.

The parties agree that the defendant is entitled to challenge the accuracy and appropriateness of the plaintiff's deductions and expenses. Doc. 187 at 5–6; Doc. 188 at 3. For example, the plaintiff appears to say that for one calendar year his expenses as a driver exceeded the money he made as a driver, and those expenses do appear quite high. To the extent the defendant is asking for a ruling that she be allowed to question witnesses about the plaintiff's tax deductions in motion *in limine* No. 7, the Court will grant the motion. *See* Doc. 187 at 5 ("That defendant be allowed to offer evidence related to plaintiff's filing of unlawful deductions and supporting documentation thereof.").

### B. Scholarships and Grants

For two years at issue, the plaintiff received scholarships and grants. The plaintiff says they are not income, and the defendant says they are income. If the Court applies the definition in § 213a.1, then the scholarships and grants are not income to the extent they did not exceed the plaintiff's qualified education expenses. If *Anderson* and similar cases are followed, then the scholarships and grants are income, regardless of whether they exceeded the plaintiff's qualified education expenses or not. For the reasons previously explained, the Court concludes that applying the definition in § 213a.1 makes more sense.

Even if that were not so, the Court rejects the defendant's argument based on the purpose of the statute. One starts with the proposition, already established in this case,

*see* Doc. 109 at 11–15, that the immigrant has no duty to earn any money and that the sponsor's obligation to the immigrant applies even if the immigrant sits around and eats bonbons all day. *See Younis*, 597 F. Supp. 2d at 557 n.5 (noting that the immigrant's inability or unwillingness to obtain full-time employment does not relieve a sponsor of her duty); *Wenfang Liu v. Mund*, 686 F.3d 418, 422–23 (7th Cir. 2012) (holding that the sponsored immigrant has no duty to mitigate). If an immigrant decides to go to school and gets a scholarship or grant to pay for tuition, it is illogical to give the sponsor the financial benefit of that decision when the immigrant does not use the scholarship or grant to pay for basic necessities that keep the immigrant from becoming a "public charge." As long as the immigrant's scholarships and grants do not exceed his qualified educational expenses, the immigrant receives no "windfall." On the other hand, the sponsor would receive a windfall by getting a credit towards her contractual obligations because the immigrant got a scholarship or grant that pays only for educational expenses. *See generally Erler I*, 824 F.3d at 1179 (noting that its definition of income "will sometimes lead to imperfect outcomes" and finding that the fact that an immigrant lives with another person does not allow a sponsor to "escape [his] support obligations by withholding payments and waiting for charitable third parties to pick up the slack").

The Court disagrees with the *Anderson* court, which held that "[t]o the extent [the immigrant's] educational grant covered her tuition and did not require repayment, it was income because it allowed her to put money she would otherwise use for tuition to other uses." *Anderson*, 840 F. App'x. at 95. This holding assumes the immigrant had a duty to go to school and obtain a grant, which she did not, and it assumes the immigrant had

13

other disposable income with which to pay for tuition, which seems an inappropriate assumption in most of these cases. It overlooks the fact that the immigrant still had to pay for housing, food, clothing, and transportation and that obtaining an education was likely to reduce the sponsor's obligations in the long-run, as the immigrant could earn more money after receiving a degree. This appears to be the case for the plaintiff here, who obtained a job after earning his degree and who no longer needs the defendant's support. It is also inconsistent with the cases that refuse to give the sponsor "credit" for money others provide to support the immigrant. *See, e.g.*, *Erler I*, 824 F.3d at 1179; *Pelc*, 883 S.E.2d at 643 (noting that apart from food stamps and educational grants "most courts have not considered other gifts, supplements, agreements, judgments, and benefits as part of a sponsored immigrant's income").

That said, should the amount the plaintiff received in scholarships and grants be greater than what he needed to pay for qualified educational expenses, then the jury may consider that as income under the definition in § 213a.1. Applying the definition in § 213a.1 benefits the defendant in that situation, since strictly applying policy arguments might result in treating scholarships and grants *in toto* the same as gifts. *See infra* pages 15–16. The Court does not know what the evidence will be in this case, but if the defendant has evidence that the plaintiff received scholarships and grants in an amount greater than his qualified educational expenses, then the evidence will be admissible. The defendant shall bring this to the Court's attention outside the presence of the jury before mentioning it in opening statement or offering the evidence.

### C. Student Loans

In motion *in limine* No. 4, the plaintiff asks the Court to "preclude any argument or evidence that Defendant's damages are offset by student loans Plaintiff received that paid for qualified education expenses." Doc. 184 at 1. In his brief, the plaintiff uses scholarships and student loans interchangeably. *See* Doc. 185 at 14. Whether one applies the § 213a.1 definition or the policy-driven case law, loans are not income. *See, e.g.*, *Shumye*, 555 F. Supp. 2d at 1025 (noting that student loans are a form of debt and do not count as income). The defendant makes no argument that loans qualify as income and relies only on her argument that scholarships and grants qualify as income. *See* Doc. 190 at 8–9. To the extent the plaintiff seeks a ruling excluding evidence and argument that the plaintiff's student loans offset the defendant's liability and excluding any argument that loans are income, the motion will be granted.

### D. Church Assistance

The defendant contends that the plaintiff received money from a church in 2019 that "was purportedly designated to pay [the plaintiff's] rent." Doc. 170 at 10. As best the Court can tell, the defendant plans to introduce this evidence at trial. *See* Doc. 178 at 6 (Defendant's Exhibit 12).

Gifts generally do not count as income for federal tax purposes. *See* 26 U.S.C. § 102(a) ("Gross income does not include the value of property acquired by gift."); *Lane v. United States*, 286 F.3d 723, 728 (4th Cir. 2002) (noting the IRS "excludes from a taxpayer's gross income 'the value of property acquired by gift'"). Since the Court will

15

adopt the definition in § 213a.1, evidence of any gifts to the plaintiff, whether used for housing or some other purpose, will be excluded.

Even if the Court were to follow the more policy-driven approach, gifts and charitable assistance are not appropriately considered income. Such a rule puts the onus on the immigrant to seek gifts and charity, rather than on the sponsor, and is inconsistent with the rule that immigrants have no duty to mitigate. *See Erler I*, 824 F.3d at 1179 (refusing to adopt a rule that would allow "sponsors to escape their support obligations by withholding payments and waiting for charitable third parties to pick up the slack"); *Pelc*, 883 S.E.2d at 643 (noting that apart from food stamps and educational grants "most courts have not considered other gifts . . . as part of a sponsored immigrant's income").

### III. Conclusion

The Court adopts the definition of "income" in § 213a.1 and will define the plaintiff's income as "total income for purposes of his U.S. Federal income tax liability." Evidence relevant to this calculation will be admitted, subject to Rule 403, and evidence irrelevant to this calculation will be excluded.

It is **ORDERED** that the parties' motions *in limine*, Docs. 184, 186, related to the definition of income are **GRANTED in part** and **DENIED in part** as follows:

1. The plaintiff's motion *in limine* No. 1 which seeks to "preclude any argument or evidence of the Plaintiff's 'income' except such monies subject to federal personal income tax" is **GRANTED** to this extent: Income means total income for purposes of the plaintiff's U.S. Federal income tax liability; evidence relevant to this calculation will be admitted, subject to Rule 403; and

16

evidence irrelevant to this calculation will be excluded. The defendant is **PROHIBITED** from arguing that "income" means "gross income" or any other definition.

2. The defendant's motion *in limine* No. 5 seeking to define income as "gross income" is **DENIED**.

3. To the extent that the defendant's motion *in limine* No. 7 requests a ruling that the defendant be allowed to elicit evidence about the appropriateness of the plaintiff's tax deductions relevant to his total income for purposes of his federal income tax liability, the motion is **GRANTED**.

4. To the extent the plaintiff seeks a ruling excluding evidence and argument that the plaintiff's student loans offset the defendant's liability and excluding any argument that loans are income, the motion is **GRANTED**. The defendant is **PROHIBITED** from making such an argument and from offering evidence of student loan amounts.

5. To the extent that the plaintiff's motion *in limine* No. 4 requests a ruling excluding evidence of scholarships and grants the plaintiff received, the motion is tentatively **GRANTED**, subject to a showing by the defendant outside the presence of the jury that the scholarships and grants exceeded the plaintiff's qualified educational expenses.

6. The defendant is **PROHIBITED** from presenting evidence of any gifts to the plaintiff, whether used for housing or some other purpose.

7. All other motions *in limine* will be addressed in separate orders.

This the 15th day of May, 2023.

_____
UNITED STATES DISTRICT JUDGE