IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

ANORUO ASILONU,　　　　　　　　)
　　　　　　　　　　　　　　　　　)
　　　　　　　Plaintiff,　　　　　)
　　　　　　　　　　　　　　　　　)
v.　　　　　　　　　　　　　　　　)　　　1:19-CV-1122
　　　　　　　　　　　　　　　　　)
ESTHER OKEIYI,　　　　　　　　　 )
　　　　　　　　　　　　　　　　　)
　　　　　　　Defendant.　　　　　)

### ORDER AND JUDGMENT FOR ATTORNEYS' FEES

Having obtained a jury verdict and judgment in his favor, the plaintiff Dr. Anoruo Asilonu seeks reasonable attorneys' fees as authorized by statute. The Court will grant the motion in large part, reducing the fee request by a small amount as explained *infra* but otherwise requiring the defendant, Dr. Esther Okeiyi, to pay Dr. Asilonu's attorneys' fees.

### BACKGROUND

Dr. Asilonu sought to immigrate to the United States. His then-mother-in-law, Dr. Okeiyi, and his then-wife, Dr. Blessing Asilonu, signed U.S. Citizenship and Immigration Services Form I-864 agreeing to serve as his sponsors. Doc. 1-3 at 9; Doc. 1-2 at 9. By signing this form, they agreed, among other things, to provide Dr. Asilonu with a basic level of financial support if he obtained lawful permanent residency in the United States. Signing the I-864 constitutes a binding contractual promise to provide support. 8 U.S.C. § 1183a(a)(1)(A)–(B). The United States granted Dr. Asilonu permanent residency in part based on that promise.

Dr. Asilonu filed suit in 2019, contending that his sponsors breached their contractual and statutory obligation to provide a basic level of financial support. Doc. 1 at ¶¶ 1–7. He later dismissed his claims against his by-then ex-wife Blessing, Doc. 82 at 1; Doc. 109 at 35, and trial proceeded against Dr. Okeiyi. The jury found Dr. Okeiyi in breach and awarded Dr. Asilonu damages of $45,862.50, Doc. 198, and the Court entered judgment accordingly. Doc. 199.

## THE PENDING MOTION

Dr. Asilonu timely filed a motion for attorneys' fees. Doc. 206; Doc. 207; *see* LR 54.2 (requiring such motions within 60 days of judgment). He asks that Dr. Okeiyi be ordered to pay attorneys' fees of $131,529 for the time of lead counsel Greg McLawsen, which includes $2,082 for preparing the reply brief in this motion, Doc. 216, $37,325 for the time of co-counsel Valeria Cesanelli, and $4,434 of Mr. McLawsen's travel expenses. Doc. 206.

Dr. Okeiyi asks the Court to substantially reduce Dr. Asilonu's proposed fee award, raising concerns that fall into two categories. First, she contends that Mr. McLawsen's rate of $600 per hour, which he charged beginning in September 2022, is unreasonable. Doc. 214 at 6.[1] Second, Dr. Okeiyi challenges various specific time entries, asserting that some are vague, others are duplicative, and yet others are for time spent on matters unrelated to the enforcement of the I-864. *Id.* at 10–14. She provides seven exhibits listing each time entry she contests. *See, e.g.*, Doc. 214-6.

---

[1] She does not challenge Mr. McLawsen's billing rates before September 2022, Doc. 214 at 7, or Ms. Cesanelli's hourly rate.

## APPLICABLE LAW

Section 213A of the Immigration and Nationality Act provides that payment of legal fees is part of the remedy available upon enforcement of a sponsor's affidavit of support. 8 U.S.C. § 1183a(c). Sponsors know this, as the affidavit of support under § 213A, known commonly as the I-864 form, expressly states "[i]f you are sued, and the court enters a judgment against you, "[y]ou may . . . be required to pay the costs of collection, including attorney fees." Doc. 1-2 at 8; Doc. 1-3 at 8. An award of attorneys' fees "may not be mandatory," but the public policy goal of ensuring affiants honor their pledges of financial support generally supports such awards. *Belevich v. Thomas*, No. 17-CV-1193, 2022 WL 6502321, at *1 (N.D. Ala. Apr. 12, 2022).

In general, "[t]he proper calculation of an attorney's fee award involves a three-step process." *McAfee v. Boczar*, 738 F.3d 81, 88 (4th Cir. 2013). A court first determines the lodestar figure "by multiplying the number of reasonable hours expended times a reasonable rate." *Robinson v. Equifax Info. Servs., LLC*, 560 F.3d 235, 243 (4th Cir. 2009). In doing so, a court should consider the 12 factors set forth in *Johnson v. Georgia Highway Express Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974):

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

3

*Robinson*, 560 F.3d at 243–44. Second, a court must "subtract fees for hours spent on unsuccessful claims unrelated to successful ones." *Id.* at 244. Finally, a court should award "some percentage of the remaining amount, depending on the degree of success enjoyed by the plaintiff." *Id.* A district court should "provide a concise but clear explanation of its reasons for the fee award." *Hensley v. Eckerhart*, 461 U.S. 424, 437 (1983).

## FINDINGS OF FACT

Findings of fact are made during discussion of the relevant factors.

## ANALYSIS

### I. The Lodestar Figure

The *Johnson* factors support Dr. Asilonu's proposed lodestar figure of $173,288. Billing statements for Mr. McLawsen, Doc. 209, and Ms. Cesanelli, Doc. 208, are comprehensive and transparent, and they multiply the amount of time spent on each task by the attorney's hourly rate to generate the total fee. Litigating an affidavit of support claim requires unusually specialized knowledge of an aspect of immigration law that is not well-known even within the immigration bar, Doc. 208 at ¶ 6, and most immigration and family lawyers in North Carolina are not fully aware of it. *Id.* at ¶¶ 6–7. Mr. McLawsen, Dr. Asilonu's lead attorney, is not only experienced in immigration law, Doc. 209-2, he is a nationally recognized expert in I-864 enforcement claims. Doc. 206-3; Doc. 206-4; Doc. 206-5; Doc. 206-6. Because Mr. McLawsen is not admitted to practice in this district, Dr. Asilonu also needed local counsel. *See* LR 83.1(c)(1); *see also* Doc.

4

208 at ¶ 3. Ms. Cesanelli is an experienced immigration and family law attorney, Doc. 208 at ¶¶ 3, 5. *See id.* at ¶ 10.

Mr. McLawsen and Ms. Cesanelli took this case on a contingency fee basis. *Id.* at ¶ 12; Doc. 209 at ¶ 5. Given Dr. Asilonu's challenging financial situation when this case began, a contingency fee arrangement was the only way he could pursue his claim. This approach increases the attorney's risk of non-payment. The case took a lot of time from both attorneys, largely because of the defense tactics involved, and both attorneys were not able to use that time on other cases with higher assurance of payment.

While the amount in controversy was not large and the requested fee is several times the amount recovered, the case demanded a lot of time because of Dr. Okeiyi's scorched-earth defense strategy and because it went to trial. Courts have approved similar fee applications after trials. *See Belevich*, No. 17-CV-1193, Doc. 118 at 4 (N.D. Ala. Mar. 6, 2020), Doc. 142 at 7 (N.D. Ala. Apr. 12, 2022) (orders granting total fee award of $122,695); *Burkhalter v. Burkhalter*, No. 19-CV-272, Doc. 163 (C.D. Cal. Aug. 2, 2022) (order granting fee award of $254,036.15). *See also* Doc. 207 at 26–27 (examples of fee awards in I-864 litigation).

Plaintiffs bear the burden of showing the requested hourly rates are consistent with the "prevailing market rates in the relevant community for the type of work for which he seeks an award." *Plyler v. Evatt*, 902 F.2d 273, 277 (4th Cir. 1990) (cleaned up). The relevant community is typically defined as "the community in which the court where the action is prosecuted sits." *Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 175 (4th Cir. 1994). A court may consider rates outside of the relevant market if "the complexity

5

and specialized nature of a case may mean that no attorney, with the required skills, is available locally." *Nat'l Wildlife Fed'n v. Hanson*, 859 F.2d 313, 317 (4th Cir. 1988) (cleaned up).

The evidence supports the hourly rates charged by Mr. McLawsen and Ms. Cesanelli. In the Court's experience, those hourly rates are generally within the range charged by local attorneys in this district for specialized civil litigation. *See, e.g.*, *Clark v. Duke Univ.*, No. 16-CV-1044, 2019 WL 2579201, at *4 (M.D.N.C. June 24, 2019).

Dr. Okeiyi challenges only Mr. McLawsen's hourly rate of $600 from September 2022 forward. But four attorneys who are experienced in immigration law, active in national immigration specialty bar groups, and familiar with I-864 litigation attest to the reasonableness of his hourly rate. Doc. 206-3 at ¶ 3; Doc. 206-4 at ¶ 5; Doc. 206-5 at ¶ 4; Doc. 206-6 at ¶ 6. They each state that Mr. McLawsen is a national expert on enforcing I-864 affidavits and that it is a highly specialized area of the law. *See also* Doc. 206-3 at ¶ 2 ("Mr. McLawsen is known nationally within the U.S. immigration bar for his work relating to the affidavits of support and is considered the leading authority on lawsuits to enforce [them]."); Doc. 206-4 at ¶¶ 4–5 (noting that Mr. McLawsen is considered the "leading national authority on enforcement of the Affidavit of Support" and that "LexisNexis has published more than a dozen articles" of his on the subject). Finally, another district court in Ohio found Mr. McLawsen's $600 rate to be reasonable last year. *See Mao v. Bright*, 645 F. Supp. 3d 805, 815 (S.D. Ohio 2022) (concluding that Mr. McLawsen's $600 hourly rate is reasonable given that he "has practiced law for thirteen years . . . specializes in immigration law . . . and has served as a consulting expert,

6

written articles and taught CLE classes on this topic."). Ms. Cesanelli affirms that she developed her expertise in this area only as a result of her work in this case. Doc. 208 ¶¶ 9–10. Given Mr. McLawsen's expertise and the absence of experienced local trial attorneys with the necessary specialized knowledge, his rate of $600, for the period of September 2022 through July 2023, just like his earlier hourly rates, is reasonable.

Dr. Okeiyi contends that Dr. Asilonu's four affidavits attesting to the reasonableness of a $600 hourly rate are conclusory and insufficient. Lack of detail in an affiant's declaration can undermine its persuasiveness, as was the situation in the case on which Dr. Okeiyi relies. *See Nichols v. Ill. Dep't of Transp.*, 4 F.4th 437, 442 (7th Cir. 2021). But here the attesting attorneys are each involved in significant professional activities within the immigration bar and are familiar with Mr. McLawsen's work. Dr. Okeiyi has offered no evidence that someone with similar qualifications would do the work for less than Mr. McLawsen, and she proffers no reason to doubt the credibility of these four attorneys.

Dr. Okeiyi also maintains that because Mr. McLawsen works on a contingency fee basis, his hourly rate is "largely artificial." Doc. 214 at 7. Following that logic, it would be impossible to set an hourly rate for Mr. McLawsen's work. The fact that a lawyer usually works on a contingency fee basis does not mean his hourly rate is unreasonable.

Finally, Dr. Okeiyi says that this litigation does not involve the type of "novel or difficult legal questions" that would allow the Court to look to a national standard when assessing the reasonableness of attorneys' fees. *Id.* at 8–9. Dr. Okeiyi raised numerous affirmative defenses that would have required a lawyer with less experience in I-864

7

litigation more time to successfully rebut. *See generally*, Doc. 109 at 15–16 (dismissing most affirmative defenses). And there was a difficult legal issue about the appropriate measure of damages, with minimal appellate case law to provide guidance, *see* Doc. 193; similarly, that legal issue would have required a lawyer with less experience than Mr. McLawsen significantly more time to fully research and learn.

It is true this case should have been straightforward and could have been handled with less work. But Dr. Okeiyi's litigation strategy made that impossible. She insisted from the beginning that the case involved "exceptional complexity," Doc. 41 at ¶ 2; LR 26.1(a)(3), and she made it more complicated by adding counterclaims, seeking discovery out of proportion to the case, and taking other steps requiring Dr. Asilonu's attorneys to spend many hours of time and effort. The number of orders entered attests to this strategy. *See, e.g.*, Doc. 90; Doc. 100; Doc. 109; Doc. 111; Doc. 163; Doc. 169; Doc. 177; Doc. 179; Doc. 193; Doc. 194; Doc. 195; Text Order 04/20/2022; Text Order 10/01/2022; Text Order 11/15/2022; Text Order 11/16/2022; Text Order 03/27/2023, Text Order 04/26/2023. A defendant "cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response." *City of Riverside v. Rivera*, 477 U.S. 561, 580 n.11 (1986) (cleaned up). The fact that Dr. Asilonu's counsel worked for almost five years with no assurance of recovering any attorneys' fee, Doc. 207 at 23, further supports a finding that the requested hourly rate reasonable.

Mr. McLawsen is an experienced attorney and a national expert in litigating I-864 enforcement cases. His $600 hourly rate for the September 2022 to July 2023 period is reasonable, based on his experience and expertise as well as the risk and complexity of

8

the litigation. Doc. 209-1 at 10–12. In light of the particular facts in this case and considering the totality of the circumstances, the *Johnson* factors support the proposed lodestar figure.

## II. Reductions to the Lodestar Figure

The second step of the attorneys' fee award calculation is for the court to "subtract fees for hours spent on unsuccessful claims unrelated to successful ones." *Robinson*, 560 F.3d at 244. As noted *supra*, Dr. Asilonu was completely successful in his claim against Dr. Okeiyi. But he initially sued another defendant, Blessing Asilonu. His attorneys also spent time dealing with a purported counterclaim by Sunday Okeiyi.

Dr. Okeiyi asks the Court to reduce the requested attorneys' fees by subtracting time spent on issues unrelated to the enforcement of the I-864 affidavit of support and other costs not covered by 8 U.S.C. § 1183a(c). She provides seven exhibits that correspond to issues she contends are unrelated. *See* Doc. 214-1; Doc. 214-2; Doc. 214-3; Doc. 214-4; Doc. 214-5; Doc. 214-6; Doc. 214-7.

### A. Time Spent on Claim Against Blessing Asilonu

Dr. Okeiyi first challenges the time entries for work directed towards Dr. Asilonu's claim against his ex-wife, Blessing Asilonu, an original defendant. Doc. 214-1; Doc. 214-3. The second step of the fee calculation requires courts to subtract for work on "unsuccessful claims unrelated to successful ones," *Robinson*, 560 F.3d at 244, but when successful and unsuccessful claims are related and contain a "common core of facts," counsel's time is seen as devoted generally to litigation as a whole. *Hensley*, 461 U.S. at

9

435. It is "difficult to divide the hours expended," and "such a lawsuit cannot be viewed as a series of discrete claims." *Id.*

A review of the records shows that counsel spent less than an hour preparing documents related to service of Blessing, totaling $208.[2] Counsel also spent time on a later-withdrawn motion for injunctive relief directed only against Blessing. Doc. 15 (filing motion); Doc. 107 (withdrawing motion). The Court has reviewed the billing statements and identified 45 entries[3] labeled as work on the withdrawn and thus unsuccessful preliminary injunction. These entries total $11,316.50: $8,829 for Mr. McLawsen, Doc. 214-1, and $2,487.50 for Ms. Cesanelli. Doc. 214-3. The time related to service and the preliminary injunction was spent on unsuccessful and unrelated claims, and the fee request will be reduced by this amount, $11,524.50.

To the extent Dr. Asilonu's attorneys spent additional time on the case against Blessing, it was time related to the overall case or was incurred fending off counteroffensives by the defense or on matters Dr. Okeiyi raised. For example, when Dr. Asilonu moved to dismiss Blessing, Doc. 82, Dr. Okeiyi objected, Doc. 85, an objection

---

[2] Doc. 214-1, billing entries: 01/18/2019, $40; 11/14/2019, $168.
[3] Doc. 214-1, billing entries: 12/04/2019, $160; 12/04/2019, $224; 12/04/2019, $264 (PI Mtn: Draft fact section); 12/04/2019, $196; 12/04/2019, $264 (PI Mtn: Research analogy cases/legal areas for injunction); 12/04/2019, $388; 12/06/2019, $364; 12/09/2019, $36; 12/09/2019, $116; 12/10/2019, $48; 12/10/2019, $464; 12/10/2019, $160; 12/13/2019, $456.25; 12/17/2019, $224; 12/17/2019, $208; 12/18/2019, $156; 12/19/2019, $688.75; 12/19/2019, $456; 12/23/2019, $372; 12/23/2019, $176; 12/23/2019, $72; 12/23/2019, $40; 01/11/2020, $108; 01/11/2020, $60; 01/11/2020, $68; 01/11/2020, $40; 01/13/2020, $40; 01/15/2020, $72; 02/11/2020, $168; 02/11/2020, $68; 02/11/2020, $528; 02/11/2020, $176; 02/11/2020, $408; 02/12/2020, $296; 02/12/2020, $148; 03/3/2020, $140; 03/3/2020, $636; 04/17/2020, $104; 04/23/2020, $236; Doc. 214-3, billing entries: 12/05/2019, $150; 12/06/2019, $375; 12/19/2019, $300; 01/11/2020, $262.50; 01/13/2020, $350; 01/16/2020, $1,050.

10

that was unsuccessful. Doc. 109. She cannot complain that Dr. Asilonu's attorneys spent time rebutting arguments that she raised. *See, e.g.*, *City of Riverside*, 477 U.S. at 581 n.11. The other billing entries Dr. Okeiyi identifies account for work on successful defensive actions, and they should not be deducted.

### B. Work Related to Sunday Okeiyi

Dr. Okeiyi's request to reduce the fee award for work defending against Sunday Okeiyi's counterclaim is unpersuasive. Doc. 214-2. Dr. Asilonu's complaint did not allege anything about Mr. Okeiyi or seek a judgment against him. Doc. 1. Dr. Okeiyi brought Mr. Okeiyi into the litigation, Text Order 03/03/2020, when she and Mr. Okeiyi included a joint counterclaim against Dr. Asilonu for unrelated property damage in the Answer. Doc. 28 at 22–23. When Dr. Asilonu sought to dismiss Mr. Okeiyi's claim, Dr. Okeiyi opposed it, Doc. 74, without success. Doc. 109 at 28–29. As explained above, it is appropriate for a court to grant attorneys' fees for legal work defending against counterclaims. Here, the purported counterclaim was by a non-party brought into the case as part of Dr. Okeiyi's larger defense tactics, and on a counterclaim she also made and which was also dismissed. Doc. 109 at 29 (referencing dismissal). She cannot now complain that she must pay the bill.

Dr. Okeiyi says that the Court should not grant attorneys' fees because Mr. Okeiyi's "counterclaim was unrelated to [Dr. Asilonu's] claim to enforce the form I-864." Doc. 214 at 11. That is true in one sense. But that logic would invite defendants to drive up the costs of I-864 enforcement actions with unrelated filings, counterclaims, and third-

11

party complaints in hopes of making it financially untenable for an immigrant to bring an enforcement claim when his sponsor financially abandons him. Encouraging costly litigation runs counter to the purposes of 8 U.S.C. § 1183a(c), which is to create a legal process to ensure affiants honor their pledges of financial support. *Belevich*, 2022 WL 6502321, at *1. In view of the history of this case, requiring Dr. Okeiyi to pay the minimal bills associated with the claim by Mr. Okeiyi is appropriate.

### C. Duplicative Time Entries and Time Spent Correcting Errors

The number of reasonable hours expended should exclude hours that are "excessive, redundant, or otherwise unnecessary." *Hensley*, 461 U.S. at 434. And a billing statement "must obviously be adjusted to delete duplicative or unrelated hours." *Rum Creek Coal Sales, Inc.*, 31 F.3d at 175; *see also Dawson v. McPherson*, No. 14-CV-225, 2014 WL 4748512, at *5 (M.D.N.C. Sept. 23, 2014).

Dr. Okeiyi identifies seven of Mr. McLawsen's billing entries and nine of Ms. Cesanelli's billing entries as duplicative or unnecessary, Doc. 214 at 12–13; Doc. 214-4; Doc. 214-5, though she does not point to the time entries with which they are allegedly duplicative. Nonetheless, the Court reviewed the time entries provided by Dr. Okeiyi and compared them with Mr. McLawsen's and Ms. Cesanelli's billing statements, Doc. 208-1; Doc. 209-1. As best the Court can tell, there are no duplicative entries. The closest are two entries made by Ms. Cesanelli on January 27, 2020, for client communications, *see* Doc. 214-5 at 2 and Doc. 208-1 at 3–4, but given all the activity in the case at that time,

12

Case 1:19-cv-01122-CCE-LPA   Document 221   Filed 10/17/23   Page 12 of 16

she easily could have communicated with her client more than once that day. *See, e.g.*, Doc. 31 (showing declaration of Dr. Asilonu was filed on that date).

Nor has Dr. Okeiyi demonstrated that the billing entries cited are for unnecessary or excessive work. For example, she complains that Mr. McLawsen spent 11 minutes revising the complaint and characterizes that as duplicative, but revision and editing of drafts is necessary and appropriate.

### D. Vague Entries and Clerical Tasks

Vague time entries are not compensable, especially when they "combine apparently clerical tasks with tasks requiring attorney judgment." *JP ex rel. Peterson v. Cnty Sch. Bd. of Hanover Cnty.*, 641 F. Supp. 2d 499, 518–19 (E.D. Va. 2009); *accord Rainbow Sch., Inc. v. Rainbow Early Educ. Holding LLC*, 887 F.3d 610, 620–21 (4th Cir. 2018). The Fourth Circuit cautions against "generalized billing that inadequately describes the tasks performed within each block of time for which a party seeks fees." *Rainbow Sch., Inc.*, 887 F.3d at 621. Specificity is required to distinguish the amount of time that can be attributed to recoverable activities. *See Superior Form Builders v. Dan Chase Taxidermy Supply Co., Inc.*, 881 F. Supp. 1021, 1027 (E.D. Va. 1994), *aff'd*, 74 F.3d 488 (4th Cir. 1996) (paralegal cannot recover paralegal rates for clerical tasks). The Fourth Circuit has affirmed district court deductions for clerical tasks. *See e.g.*, *Spell v. McDaniel*, 824 F.2d 1380, 1402–03 (4th Cir. 1987) (cleaned up) (finding no error in a district court's subtraction of ten hours for non-legal tasks to "the extent secretaries could have been competently employed to perform some of this work"); *Doe v. Kidd*, 656 F.

App'x 643, 656 (4th Cir. 2016) (finding no abuse of discretion in a 25 percent reduction because the time log included "numerous entries for copying, organizing files, and other clerical/paralegal tasks").

Ms. Cesanelli's billing statement included several entries labeled, "paralegal," that are charged at her attorney hourly rate of $350 per hour. Doc. 214-7. This time, totaling $2,776.25, will be excluded.[4] Some of her entries and Mr. McLawsen's entries relate to serving Blessing and the unsuccessful motion for injunctive relief, and those have already been excluded as discussed in *supra* Part II.A.

There are some time entries for clerical tasks. But the time spent on these tasks is so small that it would have taken almost as much time to tell someone else to undertake the work. *See, e.g.*, Doc. 214-6, billing entries: 08/22/18, $40 (taking six minutes to schedule a telephone call); 11/26/18, $88 (taking 13 minutes to locate plaintiff's former immigration attorney); 01/21/20, $56 (taking eight minutes to send print order). Other challenged work is not clerical at all, such as a detailed review of Dr. Asilonu's financial records, drafting motions, preparing notice of service, and communicating with the client, opposing counsel, and court administrators.

---

[4] Doc. 214-7, billing entries: 3/3/2020, $87.50; 8/30/2021, $75; 12/6/2021, $37.50; 2/7/2022, $37.50; 2/15/2022, $225; 3/1/2022, $37.50; 3/2/2022, $562.50; 3/7/2022, $112.50; 3/11/2022, $187.50; 3/14/2022, $37.50; 3/17/2022, $37.50; 3/17/2022, $75; 3/18/2022, $112.50; 3/18/2022, $37.50; 4/1/2022, $525; 4/20/2022, $37.50; 7/8/2022, $82.50; 10/24/2022, $180; 4/26/2023, $288.75.

The same is true of the challenges for vagueness. Some entries are not models of detailed clarity, but time entries are not novels. The time entries here are detailed enough to show the work counsel undertook.

The Court will grant Dr. Okeiyi's request to reduce Ms. Cesanelli's billing statement for work labeled as that of a paralegal, totaling $2,776.25. Otherwise, Dr. Okeiyi's objections on this basis, Doc. 214-6 and Doc. 214-7, are overruled.

### E. Post-Judgment Fees

A party can recover expenses incurred in preparing a motion for attorneys' fees. *See Ganey v. Garrison*, 813 F.2d 650, 652 (4th Cir. 1987); *Saman v. LBDP, Inc.*, No. 12-CV-1083, 2013 WL 6410846, at *7 (D. Md. Dec. 6, 2013) ("[I]t is settled law in this circuit that a party can recover expenses incurred in preparing a motion for attorneys' fees."). Dr. Okeiyi's argument to the contrary is unsupported by citation to any case law.

## III. Award Determination

The third step in an attorneys' fee calculation is to award "some percentage of the remaining amount," based on the success of the plaintiff. *Robinson*, 560 F.3d at 244. Dr. Asilonu's attorneys successfully pursued the affidavit of support claim, fended off all affirmative defenses and counterclaims, and tried a good case. The jury awarded Dr. Asilonu damages of $45,862.50, a complete victory. Doc. 199. Dr. Okeiyi has not asked the Court to reduce the fee award on a percentage basis, and the Court does not see any reason to do so. Given Dr. Asilonu's success in the lawsuit, a full recovery of his fees,

less the amounts discussed *supra* for serving Blessing, the unsuccessful and withdrawn preliminary injunction motion, and a few vague and clerical tasks, is appropriate.

It is **ORDERED and ADJUDGED** that:

1. Dr. Asilonu's motion for attorneys' fees, Doc. 206, is **GRANTED IN PART and DENIED IN PART**; and

2. Judgment is entered in favor of the plaintiff Anoruo Asilonu in the amount of $158,987.25 for his attorneys' fees.

This the 17th day of October, 2023.

_____
UNITED STATES DISTRICT JUDGE